M. A. BHATTI v. CARL D. BUCKLAND

No. 431A90

(Filed 7 February 1991)

**Unfair Competition § 1 (NCI3d) — sale of land at auction — inaccurate description — not covered by homeowner's exemption**

The Court of Appeals' decision that the sale of two lots at auction with a faulty description was not "in or affecting commerce" within the meaning of N.C.G.S. § 75-1.1 was reversed where the presence of fraud was undisputed, the sale did not fall within either of the two statutory exemptions, and the transaction at issue was indisputably a commercial land transaction that affected commerce in the broad sense. Assuming that a homeowner's exemption exists, its application is limited to an individual involved in the sale of his or her own residence; the evidence in this record was insufficient to carry defendant's burden of proving that he was a "private party engaged in the sale of a residence." *Blackwell v. Dorosko*, 93 N.C. App. 310, is disapproved to the extent that it may be read as exempting from the Act the sale of property not used as a residence and not otherwise shown to be outside the commercial context to which the protection afforded by N.C.G.S. § 75-1.1 is applicable.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

APPEAL by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 99 N.C. App. 750, 394 S.E.2d 192 (1990), affirming an order denying plaintiff's motion for treble damages and attorney fees entered by *Fountain, J.*, on 23 August 1989 in Superior Court, ALAMANCE County. Heard in the Supreme Court 10 December 1990.

*Latham, Wood & Hawkins, by B.F. Wood, and Stern, Graham & Klepfer, by William A. Eagles, for plaintiff appellant.*

*Douglas R. Hoy for defendant appellee.*

WHICHARD, Justice.

Defendant owned two lots in a tract of land known as the Whitesell Home Place in Alamance County. In June 1987 defendant, through his agent Teague Auction and Realty, Inc. (Teague), advertised the property for sale at a public auction scheduled for 27 June 1987. His ad stated:

Tract #1 Consists of 1.56 Acres with 302.06 ft. Fronting on Williamson Ave. 278.99 ft. Deep [and including a house and several outbuildings]. . . . Tract #2 Consists of 1.13 + Acres . . . w/ 299.61 ft. Fronting Whitesell Drive. 201.84 ft. Deep . . . . *Investors, Speculators, Homeseekers*, This Is Some Choice Property That You Will Want To Have A Look At. (Emphasis added.)

The ad listed defendant as the property owner and stated that Teague, third party defendant at trial, would conduct the sale.

At the auction on 27 June 1987, plaintiff purchased Tract #1 for $66,000 and Tract #2 for $39,000. Pursuant to the advertised terms of the sale, plaintiff deposited ten percent of the $105,000 purchase price, *i.e.*, $10,500, with Teague. The terms required that the balance be paid "upon delivery of deed." Subsequently, plaintiff discovered that the advertised frontage on Tract #1 was incorrect and that the deed plat in the Alamance County Register of Deeds office showed that the frontage was only 268.4 feet, substantially less than the 302.06 feet represented in the ad.

On 12 August 1987, plaintiff filed a complaint against defendant, alleging that defendant had misrepresented Tract #1's frontage and claiming that "other descriptions set forth in said advertisement, circulars, and flyers, were misleading and substantially dif-

BHATTI v. BUCKLAND

[328 N.C. 240 (1991)]

ferent from the actual size and dimensions of said property." Plaintiff further alleged that defendant had refused to refund plaintiff's payment of $10,500, and that plaintiff had relied on defendant's intentionally or recklessly misleading statements to his detriment. Plaintiff concluded by alleging that defendant's actions constituted "unfair or deceptive acts or practices" in violation of N.C.G.S. Chapter 75. Plaintiff prayed for: (1) recovery of the $10,500 plus interest from 27 June 1987; (2) treble damages and reasonable attorney fees; and (3) payment of the court costs by defendant.

Defendant answered, denying that the descriptions were intentionally misrepresented and denying that plaintiff reasonably relied on the descriptions. Defendant also contended that "publication of the plat description, including accurate meets [sic] and bounds and distances, together with the announcement prior to the auction sale, correcting the error in advertising . . . constitutes estoppel against the plaintiff's action." Defendant counterclaimed for a sum of $150,000, attorney fees, and court costs, stating:

> the reason defendant was auctioning said property was that he had certain financial obligations, including obligations to the Internal Revenue Service, which required immediate payment, that as a result of the Plaintiff's breach of the Sales Contract and his failure to tender[ ] the agreed upon Purchase Price, the Defendant was required to sell his home and incur moving and storage expenses, disrupt his family, suffer interest payments and suffer other ancillary and other consequential damages.

Further, defendant filed a third party complaint against Teague, alleging that Teague was responsible for advertising and conducting the sale, and seeking indemnification and contribution from Teague. Teague answered, alleging that: (1) there was no mistake in the description of Tract #2, and (2) defects in the description of Tract #1 were "corrected by stopping the sale and passing around plats of the property giving the correct front footage . . . [and] after inspection had been made by all of those who wished to see said plat, the sale was resumed."

At trial, the jury found that the sale was procured by defendant's "fraudulent representation" and that it was not the result of a mutual mistake. It found that plaintiff was entitled to recover from defendant $10,500 with interest from the date the suit was commenced, plus costs. The trial court entered judgment according-

ly, but denied plaintiff's motion to treble the damages pursuant to N.C.G.S. Chapter 75.

On plaintiff's appeal, the majority in the Court of Appeals — relying on *Rosenthal v. Perkins*, 42 N.C. App. 449, 257 S.E.2d 63 (1979), and *Robertson v. Boyd*, 88 N.C. App. 437, 363 S.E.2d 672 (1988) — concluded that Chapter 75 did not apply because defendant "was a private individual who engaged a realtor to auction a residence on his behalf." *Bhatti v. Buckland*, 99 N.C. App. 750, 752, 394 S.E.2d 192, 193 (1990). Judge Greene dissented, reasoning that unlike in both *Rosenthal* and *Robertson*, "no record evidence supports a finding that defendant was a homeowner selling his own home," so the sale in question was "in or affecting commerce" within the meaning and intent of that phrase as used in N.C.G.S. § 75-1.1. *Bhatti*, 99 N.C. App. at 752, 394 S.E.2d at 194 (Greene, J., dissenting).

Because this case is before us pursuant to N.C.G.S. § 7A-30(2), our review is limited to the issue raised in Judge Greene's dissent: whether defendant's sale of the two lots was "in or affecting commerce" within the meaning and intent of that phrase as used in N.C.G.S. § 75-1.1. N.C.R. App. P. 16(b). For the reasons stated below, we hold that defendant's actions were "in or affecting commerce." We accordingly reverse.

N.C.G.S. § 75-1.1 declares unlawful "[u]nfair methods of competition in or affecting commerce." N.C.G.S. § 75-1.1(a) (1988). The case law applying Chapter 75 holds that a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred. "Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts . . . ." *Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975). If a violation of Chapter 75 is found, treble damages must be awarded. *Pinehurst, Inc. v. O'Leary Bros. Realty*, 79 N.C. App. 51, 61, 338 S.E.2d 918, 924 ("damages assessed pursuant to G.S. Sec. 75-1.1 are trebled automatically"), *cert. denied*, 316 N.C. 378, 342 S.E.2d 896 (1986); *see also Atlantic Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 715 (4th Cir.) ("award of treble damages is a right of the successful plaintiff"), *cert. denied*, 464 U.S. 848, 78 L. Ed. 2d 143 (1983). Once the plaintiff has proven fraud, thereby establishing prima facie a violation of Chapter 75, *see Powell v. Wold*, 88 N.C. App. 61, 68, 362 S.E.2d 796, 800 (1987), the burden shifts to the defendant to prove that he is exempt from the provisions of N.C.G.S.

BHATTI v. BUCKLAND

[328 N.C. 240 (1991)]

§ 75-1.1. N.C.G.S. § 75-1.1(d) (1988); *see Edmisten, Attorney General v. Penney Co.*, 292 N.C. 311, 314, 233 S.E.2d 895, 897 (1977); *Olivetti Corp. v. Ames Business Systems, Inc.*, 81 N.C. App. 1, 22, 344 S.E.2d 82, 94 (1986), *aff'd in part and rev'd in part on other grounds*, 319 N.C. 534, 356 S.E.2d 578 (1987).

Application of Chapter 75 is not unfettered, however. The statute itself exempts both "professional services rendered by a member of a learned profession," N.C.G.S. § 75-1.1(b), and acts by an advertising medium unaware of their "false, misleading or deceptive character." N.C.G.S. § 75-1.1(c) (1988). Our Court of Appeals has engrafted a further exemption. In two cases—*Rosenthal*, 42 N.C. App. 449, 257 S.E.2d 63, and *Robertson*, 88 N.C. App. 437, 363 S.E.2d 672—that court has held that private homeowners selling a residence are not subject to the Act. In *Rosenthal*, the court stated:

> The defendants . . . were not engaged in trade or commerce. They did not by the sale of their residence on this one occasion become realtors. It is clear from the cases involving violation of the Unfair Trade Practices Act that the alleged violators must be engaged in a business, a commercial or industrial establishment or enterprise.

*Rosenthal*, 42 N.C. App. at 454, 257 S.E.2d at 67; *see also Robertson*, 88 N.C. App. at 443, 363 S.E.2d at 676 ("private parties engaged in the sale of a residence [are] not involved in trade or commerce and cannot be held liable under [Chapter 75].").

Defendant did not appeal from the jury's finding that the sale here was procured by his "fraudulent representation," so that finding is undisputed. Because the presence of fraud is undisputed, defendant's acts were "unfair or deceptive." *Hardy v. Toler*, 288 N.C. at 309, 218 S.E.2d at 346. The focus of our inquiry, then, is upon whether defendant has met his burden of proving that the sale nevertheless was not "in or affecting commerce" within the meaning and intent of N.C.G.S. § 75-1.1. N.C.G.S. § 75-1.1(a), (d).

It is clear beyond argument that the sale in this case does not fall within either of the two statutory exemptions. It remains, then, to determine whether it falls within the "homeowner's exception" created by the Court of Appeals, or is otherwise exempt. Apart from the "homeowner's exception," no basis for exempting the sale is either argued by the parties or suggested by the record.

While this Court has not passed upon the "homeowner's exception," for purposes of deciding this case we assume, *arguendo*, that it exists, and that the sale by a private party of his or her residence is not within the scope of Chapter 75.

In determining whether defendant has met his burden of proving himself within the scope of the "homeowner's exception," we consider the facts he has proved in the context of the purposes underlying the protections provided by Chapter 75. The General Assembly initially stated the purpose of section 75-1.1 as follows:

> The purpose of this section is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all level[s] of commerce be had in this State.

N.C.G.S. § 75-1.1 (1975) (quoted in *Threatt v. Hiers*, 76 N.C. App. 521, 522, 333 S.E.2d 772, 773 (1985), *disc. rev. denied*, 315 N.C. 397, 338 S.E.2d 887 (1986)). The law was enacted "to establish an effective private cause of action for aggrieved consumers in this State," and it "was needed because common law remedies had proved often ineffective." *Marshall v. Miller*, 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981); *see also Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 165 (4th Cir. 1985) ("The apparent purpose behind the enactment of § 75-1.1 was the protection of the consuming public.").

The General Assembly subsequently amended section 75-1.1(b) to define "commerce" inclusively as "business activity, *however denominated*," limited only by the express exemptions set forth above. N.C.G.S. § 75-1.1(b) (1988) (emphasis added). The term "business" generally imports a broad definition. *See, e.g.,* Webster's New Collegiate Dictionary 113 (G. & C. Merriam Co., Springfield, Mass., 1953) ("Business, *often an inclusive term*, specifically names the combined activities of those engaged in the purchase and sale of commodities or in related financial transactions") (emphasis added). Other courts have emphasized the inclusive nature of the statute in light of the foregoing considerations. Our Court of Appeals has stated: "The purpose of G.S. 75-1.1 is to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public in this State[,] and [it] *applies to dealings between buyers and sellers at all levels of commerce.*"

*United Virginia Bank v. Air-Lift Associates*, 79 N.C. App. 315, 320, 339 S.E.2d 90, 93 (1986) (emphasis added). A federal court sitting in North Carolina has stated, similarly: "[T]he Act is directed toward maintaining ethical standards in dealings between persons engaged in business and to promote good faith *at all levels of commerce.*" *United Roasters, Inc. v. Colgate-Palmolive Co.*, 485 F. Supp. 1041, 1046 (E.D.N.C. 1979) (emphasis added).

So far as the record here reveals, the transaction at issue was indisputably a commercial land transaction that affected commerce in the broad sense. Defendant's advertising of this property explicitly appealed to "Investors [and] Speculators" as well as "Homeseekers." The more probable inference from this evidence is that the sale was not of residential property. This probability is further advanced by defendant's assertion in his counterclaim that plaintiff's failure to pay "the agreed upon Purchase Price" required defendant "to sell his home." This pleading does nothing to advance the proposition that defendant was selling residential property, but suggests instead that his residence and the property sold here were discrete entities. Assuming that a "homeowner's exception" exists, its application is limited to an individual involved in the sale of his or her own residence. The only evidence in this record tending in any way to prove that the property at issue was residential was that the advertisement noted that the lots to be sold included a house and several outbuildings. This evidence is insufficient to carry defendant's burden of proving that he was a "private party engaged in the sale of a residence."

On the contrary, to the limited extent that the transaction is depicted by the sparse facts in this record, it involved a buyer and seller in a commercial context to which the protections afforded by section 75-1.1, whether viewed literally or purposively, apply. The defendant did not prove that the transaction was anything other than a business activity well within the banks of the stream of commerce as broadly defined by the General Assembly in N.C.G.S. § 75-1.1. As such, plaintiff is entitled to the protection of the statute.

We thus conclude that the sale fell within the ambit of the inclusive phrase "business activities, however denominated," N.C.G.S. § 75-1.1(b), and was therefore "in or affecting commerce" within the meaning and intent of that phrase as used in N.C.G.S. § 75-1.1(a). Because the jury found that the sale was procured by defendant's

"fraudulent representation," plaintiff was entitled to treble damages. *Hardy v. Toler*, 288 N.C. at 309, 218 S.E.2d at 346.

Defendant relies in part on *Blackwell v. Dorosko*, 93 N.C. App. 310, 377 S.E.2d 814, *opinion withdrawn in part on other grounds upon rehearing*, 95 N.C. App. 637, 383 S.E.2d 670 (1989), which held that the owner of a resort condominium unit at Kure Beach, "as a private vendor of realty," could not be subject to liability under N.C.G.S. § 75-1.1 in its sale. *Blackwell*, 93 N.C. App. at 314, 377 S.E.2d at 817-18. It is impossible to determine from the opinion in *Blackwell* whether the condominium unit there was the seller's residence. To the extent that *Blackwell* may be read as exempting from the Act the sale of property not used as a residence and not otherwise shown to be outside the commercial context to which the protection afforded by N.C.G.S. § 75-1.1 is applicable, it is disapproved.

For the reasons stated, the decision of the Court of Appeals is reversed. The cause is remanded to the Court of Appeals for further remand to the Superior Court, Alamance County, for entry of a judgment for treble the amount of damages fixed by the verdict. N.C.G.S. § 75-16 (1988). The superior court shall also determine, in its discretion, whether to award plaintiff an attorney fee. N.C.G.S. § 75-16.1 (1988).

Reversed and remanded.