**CITY–WIDE ASPHALT PAVING, INC., Plaintiff,**

v.

**ALAMANCE COUNTY, Defendant.**

**Civil No. 2:96CV66.**

United States District Court, M.D. North Carolina, Greensboro Division.

March 25, 1997.

J. David James, Seth R. Cohen, Smith, Follin & James, Greensboro, NC, for Plaintiff.

James Redfern Morgan, Jr., Womble Carlyle Sandridge & Rice, Winston–Salem, NC, S.C. Kitchen, Office of Durham County Attorney, Durham, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

Plaintiff, City–Wide Asphalt Paving, Inc. (City–Wide), a disappointed bidder, filed this action under 42 U.S.C. § 1983 against Alamance County (the "County") for alleged deprivation of its Fourteenth Amendment rights and for violation of a state bidding statute. City–Wide claims it suffered damages in excess of $10,000.00 as a result of the County's decision to reject City–Wide's low bid on a local landfill contract. City–Wide also alleges that the County failed to comply with state law pertaining to the award of solid waste management contracts. The court issued an order and memorandum opinion on August 12, 1996, denying Defendant's motion for judgment on the pleadings due to insufficient facts in the record. The case is now before the court on the County's motion for summary judgment. After a thorough review of the now fully developed record, the court finds that City–Wide has not stated a cognizable federal constitutional claim. Defendant's motion for summary judgment as to Plaintiff's federal claims will be granted.[1] Plaintiff's state law claims will be dismissed without prejudice.

## FACTS

In October 1993, the County issued a Request for Proposals (RFP) seeking bids to operate the Alamance County landfill. A copy of the RFP was sent to City–Wide and other companies. The County also ran an "invitation to bid" in a local newspaper. City–Wide was one of three companies which submitted bids in response to the October RFP. The two other companies were Triangle Paving, Inc., and Mace Grading Company, Inc. (Mace). City–Wide's proposal was

not the low bid in response to the October RFP, but was the only proposal in compliance with that RFP.[2] The Alamance County Board of Commissioners (the "Board") unanimously voted to reject all bids and issued a new RFP one month later. The same three companies bid on the project again. Although City–Wide's new bid was the lowest of the three submitted and had been recommended by the County's purchasing agent, the Board voted to award the contract to Mace. Mace was the contractor on site at the Alamance County landfill in the fall of 1993.

The stated purpose for the October and November RFPs was "to enter into a contract to provide equipment and personnel necessary to operate the Alamance County landfill." (Smith Aff. [Doc. # 35], Exs. B, Oct. 1993 RFP at 2.)[3] Both RFPs indicate that "contractor proposals and *qualifications* will be assessed after which the County my enter into negotiations with one or more Contractors." *Id.* (emphasis added). In the RFPs, the County reserved the right "to accept or reject any or all proposals or parts thereof." *Id.* at 9 ¶ I. The County also reserved the right "to change, add or delete any terms or conditions" in the RFP during contract negotiations. *Id.* Although the RFPs explicitly stated that North Carolina law was to govern interpretation of the proposals, nowhere did the County indicate that the RFPs were being issued in accordance with, or governed by, a North Carolina bidding statute. *Id.*

The RFPs reflect the County's desire to contract with an entity "capable of performing the work described" therein. *Id.* ¶ H. The bidders were all required to include a company resume which set forth the "years in business, size of company, any license held, and ... a brief description of major projects undertaken in the past." *Id.*

1. Although the North Carolina Supreme Court has interpreted the "law of the land" clause of the North Carolina Constitution as synonymous with the Fourteenth Amendment, North Carolina courts are not bound by decisions interpreting the United States Constitution when construing provisions of the North Carolina Constitution. *Simeon v. Hardin*, 339 N.C. 358, 377, 451 S.E.2d 858, 871 (1994). Accordingly, Plaintiff's state constitutional claims will be dismissed without prejudice.

2. On motion for summary judgment, the court views the facts in a light most favorable to City–Wide, the non-movant. *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir.1992), *cert. denied*, 507 U.S. 918, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993).

3. The November RFP was substantially similar to the October RFP. The differences between the two RFPs are immaterial for purposes of the court's analysis.

In addition to the RFPs, the County also ran a related "invitation to bid" in a local newspaper. The invitation succinctly set forth the nature of the project and gave an address and telephone number for obtaining specific information. The County reserved "the right to refuse any and all bids" in the invitation as published. (Smith Aff. Ex. A.)

In the fall of 1993, City–Wide was owned exclusively by Mr. and Mrs. Carl Buckland. Mr. Buckland owned the majority interest and held himself out as the owner and operator of City–Wide. City–Wide had never operated a municipal landfill. At the time City–Wide submitted its bids, Mr. Buckland was in bankruptcy. Plaintiff concedes that "there were a number of lawsuits in which Buckland or [City–Wide] had been involved," and that by the time the contract was made with Mace, one judgment remained outstanding against Mr. Buckland. (Pl.'s Br. in Opp'n Def.'s Mot. Summ. J. at 14–15.) The Board was aware of Mr. Buckland's liability for fraud and unfair and deceptive trade practices arising out of an unrelated incident and upon which Mr. Buckland had not yet satisfied the outstanding judgment. *See Bhatti v. Buckland*, 328 N.C. 240, 400 S.E.2d 440 (1991).

On January 3, 1994, the Board awarded the landfill contract to Mace by a vote of four-to-one. The minutes from that Board meeting indicate that the Board focused on "past performance and experience by Mace Grading, and concerns about [City–Wide's] ability to perform and financial condition, as well as the failure to disclose the suspension of the corporate charter of City–Wide ... as reasons for awarding the contract to Mace." (Pl.'s Dep. Ex. 8, Bd. Meeting Minutes of Jan. 3, 1994, at 79.) To summarize, the four county commissioners set forth the following specific reasons for denying the contract award to City–Wide:

(a) Informal investigation revealed that Mr. Buckland's credit rating was poor;

(b) City–Wide did not have the employees, equipment or experience necessary to operate the landfill;

(c) Mr. Buckland's demeanor and conduct at prior Board meetings raised concern regarding his ability to conduct himself in a businesslike manner and with candor on behalf of City–Wide in negotiating and communicating with the Board and other county officials. (Def.'s Br. in Supp. Mot. Summ. J. at 5–8.)

On January 23, 1996, Plaintiff filed a complaint alleging that: (1) The County deprived City–Wide of its right to substantive due process because the refusal to award the contract to City–Wide was "unreasonable, arbitrary, or capricious and evidenced a manifest abuse of discretion by the [County]," (*see* Pl.'s Compl. ¶¶ 12 & 13); and (2) the County "violated the provisions of N.C. [Gen.Stat.] § 143–129.2 in awarding the contract to Mace," because Mace's bid was not more "responsive" than City–Wide's, (Pl.'s Compl. ¶ 22).[4]

## DISCUSSION

■ To prevail on its Section 1983 claim, City–Wide must establish that the County violated the Constitution or some other underlying federal statute. *See* 42 U.S.C.A. § 1983 (Supp.1997); *see also Ricker v. Edmisten*, No. 93–1756, 1994 WL 32807, at *1 (4th Cir. Feb.7, 1994)(affirming district court ruling in favor of North Carolina administrative body in a disappointed-bidder action upon concluding that the decision-making body had unlimited discretion in selecting bids). City–Wide alleges a violation of the federal constitutional guarantees of equal protection and substantive due process.

### A. *Equal Protection Analysis*

With regard to equal protection, the Fourth Circuit has maintained the following:
The Equal Protection Clause limits all state action, prohibiting any state from denying a person equal protection through the enactment, administration, or enforce-

---

**4.** Plaintiff voluntarily dismissed an additional claim regarding the unconstitutionality of N.C. Gen.Stat. § 143–129.2 which based on the assertion that Section 143–129.2 is not rationally re-

lated to a proper governmental purpose because, by its terms, the local government is given "unlimited discretion in selecting bids and awarding contracts." (Pl.'s Compl. ¶ 18.)

ment of its laws and regulations. Even though a state law is facially neutral, its administration or enforcement can effect an unequal application by favoring one class of persons and disfavoring another.... [I]f a classification is not explicitly stated [on the face of the statute], the plaintiff bears the initial burden of proving that a classification was nonetheless intentionally utilized.... [O]nly if the use of a classification is thus established does the equal protection analysis proceed with the inquiry into whether the classification furthers a legitimate legislative purpose.

*Sylvia Dev. Corp. v. Calvert County, Maryland,* 48 F.3d 810, 818–19 (4th Cir.1995).

City–Wide does not argue that N.C. Gen. Stat. § 143–129.2 is facially discriminatory. Rather, City–Wide alleges that the County administered the bidding statute discriminatorily. Therefore City–Wide must prove both an improper classification and invidious intent to discriminate. *Id.* at 819 ("[M]ore must be shown than the fact that a benefit was denied to one person while conferred on another.").

█ Plaintiff's equal protection argument is fatally flawed for two reasons. First, Plaintiff's complaint does not allege that the County intentionally discriminated against City–Wide because of City–Wide's membership in a protected class. "In assessing an equal protection challenge, a court is called upon only to measure the basic validity of the legislative *classification.*" *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979)(emphasis added). Plaintiff has not alleged an unconstitutional classification.[5] Plaintiff's complaint and subsequent memoranda indicate that the equal protection claim is based upon the County's decision to award the contract to Mace which City–Wide alleges constituted an unreasonable, arbitrary, or capricious abuse of discretion. (Pl.'s Compl. ¶¶ 12, 13; Pl.'s Br. in Opp'n Def.'s Mot. Summ. J. at 17.) Like the plaintiff in *Ricker,*

City–Wide "has not alleged that a statutory scheme creates a class of individuals subject to disparate treatment nor has [it] made a showing that state law was applied unequally, given the discretion of the [County] to approve or disapprove proposals." 1994 WL 32807, at *2. City–Wide has not alleged that N.C. Gen.Stat. § 143–129.2 creates an unconstitutional classification or deprives it of equal protection, nor do City–Wide's allegations regarding the County's application of that statute point to any improper classification.

Second, City–Wide has neither alleged nor offered proof of discriminatory intent.

Several factors have been recognized as probative of whether a decisionmaking body was motivated by a discriminatory intent, including: (1) evidence of a "consistent pattern" of actions by the decisionmaking body disparately impacting members of a particular class of persons; (2) historical background of the decision, which may take into account any history of discrimination by the decisionmaking body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decisionmakers on the record or in the minutes of their meetings. *Sylvia Dev.,* 48 F.3d at 819 (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 266–68, 97 S.Ct. 555, 564–65, 50 L.Ed.2d 450 (1977)).

City–Wide contends that the County has, for nearly twenty years, favored Mace and given Mace "preferential treatment." (Pl.'s Br. in Opp'n Def.'s Mot. Summ. J. at 2–3.) Assuming such preference exists, these facts alone are insufficient to prove disparate impact on members of a particular class. City–Wide offers no proof of a history of discrimination by the County against any particular group of which City–Wide is a member. City–Wide argues strenuously that the Coun-

---

**5.** It is entirely unclear from Plaintiff's submissions precisely what classification City–Wide finds objectionable. Implicit in Plaintiff's complaint and memoranda are allegations that the County improperly considered Mr. Buckland's

financial condition and status as a judgment debtor and as a debtor in bankruptcy. However, Mr. Buckland is not a party to this action. The court need consider only allegations of improper classification as to City–Wide.

ty departed from "normal procedures" in re-bidding the contract and in rejecting the low bid. This contention is insufficient to establish clear and intentional discrimination in light of the broad discretion which the County had in awarding the landfill contract.

City–Wide's remedy for the aforementioned grievances is through local democratic or electoral process. The court of appeals has cautioned that the court is not to "substitute its value judgments for those established by the democratically chosen branch." *Sylvia Dev.*, 48 F.3d at 820. The court does not sit as a superlegislature to judge the wisdom or desirability of local government decisions "in areas that neither affect fundamental rights nor proceed along suspect lines." *Id.* (quoting *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976)). Like the zoning decision at issue in *Sylvia Dev.,* the decision to award a local landfill contract is "inescapably a political function." 48 F.3d at 828. There is nothing in the record, including the County meeting minutes, to support an allegation that the County acted with discriminatory intent. For these reasons, Plaintiff's equal protection claim fails.

B. *Substantive Due Process Analysis*

City–Wide claims that the decision to award the contract to Mace was arbitrary and capricious and therefore violated its right to substantive due process. (*See* Pl.'s Compl. ¶¶ 12, 13.) "Substantive due process is a far narrower concept than procedural (due process); it is an absolute check on certain governmental actions notwithstanding 'the fairness of the procedures used to implement them.'" *Love v. Pepersack,* 47 F.3d 120, 122 (4th Cir.) (quoting *Weller v. Dep't of Soc. Servs. for Baltimore,* 901 F.2d 387, 391 (4th Cir.1990)), *cert. denied,* —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 27 (1995).

To make out a claim that the County's action violated substantive due process, Plaintiff must demonstrate "(1) that [it] had property or a property interest; (2) that the State deprived [it] of this property or property interest; and (3) that the State's action falls so beyond the outer limits of legitimate governmental action that no process could

cure the deficiency." *Sylvia Dev.,* 48 F.3d at 827 ("[S]ubstantive due process is indeed narrow and covers only state action which is 'so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'") (quoting *Rucker v. Harford County, Maryland,* 946 F.2d 278, 281 (4th Cir.1991), *cert. denied,* 502 U.S. 1097, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992)).

To prevail, City–Wide must demonstrate that it had a property interest in being awarded the contract. A property interest may be created or defined by state law. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). To have a property interest, City–Wide must prove that it had "a legitimate claim of entitlement to [the contract award]." *Id.* ("[A plaintiff] must have more than a unilateral expectation....") The Fourth Circuit has applied the language of *Roth* in cases involving other than a claim of entitlement to benefits. *Sylvia Dev.,* 48 F.3d at 826 (denial of development license for subdivision construction); *Love,* 47 F.3d at 122 (denial of application for purchase of handgun); *Prism Constr. Co. v. Montgomery County, Maryland,* No. 93–1578, 1994 WL 548895, at *3 (4th Cir. Oct.7, 1994) ("disappointed bidder" action brought by unsuccessful bidder for county parking garage contract); *Ricker,* No. 93–1756, 1994 WL 32807, at *1–2 ("disappointed bidder" action brought for rejection of bid to lease a building to the State of North Carolina). These cases instruct that a cognizable property interest exists only where the state actor's discretion is narrowly circumscribed, *Gardner v. City of Baltimore Mayor,* 969 F.2d 63, 68 (4th Cir. 1992), and to the extent the state statute or rule at issue "prescribe[s] substantive rules of decision." *Stewart v. Bailey,* 7 F.3d 384, 392 (4th Cir.1993).

City–Wide claims a property interest arising from two independent sources: the first being a claim to a legitimate entitlement pursuant to N.C. Gen.Stat. § 143–129.2, and the second purportedly arising from state

common law pertaining to judicial review of governmental decisions in circumstances involving allegations of fraud or abuse of discretion. (*See* Pl.'s Br. in Opp'n Def.'s Mot. Summ. J. at 8–9.) With regard to Section 143–129.2, Plaintiff claims that the County's discretion was circumscribed because once proposals were solicited pursuant to that statute the County "was bound then to follow the process set out in that statute." (*Id.* at 17.) Neither the RFPs nor the County's newspaper advertisement indicates that proposals were being solicited pursuant to Section 143–129.2. However, assuming without deciding, that the County was seeking, or was required to seek, bids pursuant to Section 143–129.2, the court finds that the plain language of the statute gives broad discretion to the local government in making the contract-award decision.

■ City–Wide directs the court to Section 143–129.2(e) which provides that the local government "may make a contract award" to a "responsible proposer" if it is determined that "the selected proposal is more responsive" to the RFP. N.C. Gen.Stat. § 143–129.2(e) (1996). The language in this subsection is not mandatory. The word "may" appears no less than five times in this subsection. Contrary to Plaintiff's assertion, the County's discretion was unfettered under the statute. Nothing in the language of Section 143–129.2 precludes the County from reserving the right to reject any and all bids. The decision regarding which individuals or entities are "responsible proposers" and which proposals are "more responsive" are left solely within the discretion of the local government.

■ It is not enough that an agent of the County, in this case the County's purchasing director, recommended that City–Wide's bid be accepted. *See Sylvia Dev.*, 48 F.3d at 826–27 (rejecting plaintiff's claim to entitlement based on the favorable recommendation of a lower county official). Like the ordinance at issue in *Sylvia Dev.*, Section 143–129.2 does not mandate that the local government follow the recommendation of County officials such as purchasing directors. *Id.* In summary, Section 143–129.2 does not vest in City–Wide a property interest under the facts of this case. The statute does not mandate the award of a contract "based on objective, particularized criteria." *Mallette v. Arlington County Employees' Supplemental Retirement Sys. II,* 91 F.3d 630, 640 (4th Cir.1996). Neither the RFPs nor Section 143–129.2 required that the County award the contract to the low bidder.[6]

Plaintiff also contends that it has "an independent property interest under the well-settled common law rule that decisions of public bodies are subject to judicial review." (Pl.'s Br. in Opp'n Def.'s Mot. Summ. J. at 8.) It cannot be disputed that Plaintiff is entitled to petition North Carolina courts to review decisions of local public bodies. State courts may provide a remedy when the decisions of local government have been proven arbitrary, capricious, or an abuse of discretion.

■ However, the right to seek judicial review in and of itself does not create a property interest. On this point, Plaintiff has inexplicably interposed concepts related to procedural due process which are not part of its claim for relief. City–Wide cannot contend in good faith that the County has precluded them from seeking relief in state court. Even if there were proof that the County had violated state common law, these facts alone would not be "determinative of whether the decision violated federal substantive due process." *See Sylvia Dev.*, 48

---

**6.** Plaintiff does not specifically argue that the RFPs create a legitimate entitlement to award of the contract nor do the RFPs contain any language which would support such an argument. To the contrary, the County has reserved the right to accept or reject any proposal and had reserved "the right during contract negotiations to change, add or delete any terms or conditions in [the] request for proposal[s]." (RFPs at 9.)

Additionally, Plaintiff has not argued a property interest arising out of the conduct of, or statements by, County officials. In reviewing the minutes from County board meetings and numerous correspondences between the parties, the court has not found any language to support a legitimate claim of entitlement to award of the contract based on statements made by the County or a "mutually explicit understanding[ ]." *See Beckham v. Harris,* 756 F.2d 1032, 1036 (4th Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 231 (1985).

F.3d at 829 ("Actions that violate state law are properly challenged in state courts.")

██ In *Sylvia Dev.*, the court considered plaintiff's substantive due process claim under circumstances where a prior state adjudication had conclusively determined that the county board had acted arbitrarily in denying a zoning permit to the plaintiff. *Id.* at 817, 829 n. 7 (stating that "the inquiry into 'arbitrariness' under the Due Process Clause is completely distinct from and far narrower than the inquiry into 'arbitrariness' under state or federal administrative law."). Therefore, even if the facts in this case supported City–Wide's contention that the Board acted arbitrarily under North Carolina state law, those facts alone do not necessarily rise to the level of a federal constitutional claim.

██ The court does not condone arbitrary and capricious decisions of local government bodies. However, "[s]tate courts exists in order to, among other things, protect citizens against misapplications of state law." *Love,* 47 F.3d at 123. There can be no due process violation unless it is shown that "the state court can do nothing to rectify the injury that the state has already arbitrarily inflicted." *Id.* City–Wide does not have a property interest for purposes of due process analysis simply because state common law affords them a remedy against abusive and arbitrary local government decisions. The federal courts do not, nor does the Fourteenth Amendment's Due Process Clause, function as a general overseer of arbitrariness in state and local land-use decisions. *Gardner,* 969 F.2d at 69 ("In our federal system, that is the province of the state courts.") "[I]n the absence of state law creating a property interest in the disappointed bidder for state contracts, the bidder lacks standing to question the award of the contract." *Sowell's Meats & Servs., Inc. v. McSwain,* 788 F.2d 226, 228 (4th Cir.1986). Because the court concludes that the County had broad discretion regarding the award of the contract under the facts of this case,

City–Wide lacks standing under federal law to question the County's award of the contract.[7]

Having granted summary judgment for Defendant on Plaintiff's federal claims, the court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C.A. § 1367(c)(3); *Prism Constr.,* No. 93–1578, 1994 WL 548895, at *4.

## CONCLUSION

Defendant's motion for summary judgment will be granted as to Plaintiff's federal claims. Plaintiff's state law claims will be dismissed without prejudice.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## *ORDER and JUDGMENT*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Plaintiff's state law claims are **DISMISSED** without prejudice.

IT IS ORDERED AND ADJUDGED that Defendant's motion for summary judgment [# 32] is **GRANTED** as to Plaintiff's federal claims, and those claims and this action are **DISMISSED** with prejudice.

---

7. Although unnecessary to the court's decision, were the court to consider whether the County's decision "falls so far beyond the outer limits of legitimate government action that no process could cure the deficiency," *Sylvia Dev.,* 48 F.3d at 827, the court would find that the County's action was reasonable under the circumstances of this case.