Justice EARLS concurring in part and dissenting in part.
**342 I dissent from the holding of Section III of the majority opinion concerning the extent to which plaintiffs' allegations of unfair and deceptive trade practices that are not based on the same allegations as their antitrust claims are barred by the "learned profession" exclusion of N.C.G.S. § 75-1.1(a). In all other respects I concur with the remainder of the opinion. This Court has not previously interpreted the scope of the statutory learned profession exception to the general prohibition on unfair methods of competition and unfair and deceptive trade practices. In my view, the specific allegations of the complaint relating to that claim in this case do not properly fall within the scope of that exception because the alleged unfair and deceptive conduct in question was not the rendering of professional services, namely chiropractic services, to patients. Therefore, I would reverse the 18 August 2017 ruling of the business court, Sykes v. Health Network Solutions, Inc ., No. 13 CVS 2595, 2017 WL 3601347 (N.C. Super. Ct. Forsyth County (Bus. Ct.) Aug. 18, 2017) ( Sykes I ), with regard to claims under the unfair and deceptive trade practices act, N.C.G.S. § 75-1.1 (UDTP) that are based on allegations separate and distinct from the antitrust claims, and remand for further proceedings on those claims.
Most of the allegations in this case relate to plaintiffs' claims that defendant Health Network Solutions, Inc. (HNS) operates an intermediary network for chiropractic services that functions as a monopsony, a buyer-side form of restraint of trade to control competition, supply, and the pricing of chiropractic services in North Carolina. Indeed, almost all of the trial court's first order, which is the order dismissing the UDTP claims, actually addresses the antitrust claims. There has been scant attention to the UDTP allegations that are separate and apart from the antitrust claims.
The UDTP claim for relief in plaintiffs' second amended complaint alleges thirteen grounds, of which seven relate to antitrust violations and anticompetitive conduct.[1] Of the remaining six, one is a conclusory **343 characterization that does not specify any particular behavior.[2] The five allegations based on distinct conduct not encompassed by the antitrust claims are that "Defendants' actions and conduct that constitute unfair and deceptive trade practices include, but are not limited to:"
d. implementing a utilization review procedure without being authorized or licensed to do so;
e. failing to follow statutory requirements for utilization review;
....
g. organizing a medical service corporation without being licensed to do so;
*478 ....
i. failing to disclose their conflicts of interest;
j. misrepresenting their services and the benefits provided to Providers participating in the HNS Network[.]
Plaintiffs make additional allegations relevant to this claim, including that defendants were engaged in commerce and that these unfair and deceptive practices have caused plaintiffs damages in excess of $ 10,000. Thus, on a motion to dismiss under Rule 12(b)(6), reviewed de novo by this Court, the question is whether, if true, the allegations state a claim for relief under some legal theory. Corwin ex rel. Corwin Tr. v. British Am. Tobacco PLC , --- N.C. ----, ----, 821 S.E.2d 729, 736 (2018) (citing CommScope Credit Union v. Butler & Burke, LLP , 369 N.C. 48, 51, 790 S.E.2d 657, 659 (2016) ).
The General Assembly enacted N.C.G.S. § 75-1.1 almost exactly fifty years ago, stating that:
The purpose of this Section is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business, and between persons engaged in business and the consuming public within this State, to the end that good faith and fair dealings **344 between buyers and sellers at all levels of commerce be had in this State.
Act of June 12, 1969, ch. 833, sec. 1(b), 1969 N.C. Sess. Laws 930, 930. In 1977 the statute was "amended ... to define 'commerce' inclusively as 'business activit[ies], however denominated ,' " Bhatti v. Buckland , 328 N.C. 240, 245, 400 S.E.2d 440, 443 (1991), subject to the express limitation for "professional services rendered by a member of a learned profession," Act of June 27, 1977, ch. 747, sec. 2, 1977 N.C. Sess. Laws 984, 984. As this Court explained in Bhatti , consistent with the purpose of the law to protect the consuming public and the generally broad definition of the term "business," the statute is intended to have an inclusive scope, 328 N.C. at 245-46, 400 S.E.2d at 443-44, and the 1977 amendments in particular were "intended to expand the potential liability for certain proscribed acts," United Roasters, Inc. v. Colgate-Palmolive Co. , 485 F. Supp. 1049, 1057 (E.D.N.C. 1980), aff'd , 649 F.2d 985 (4th Cir.), cert. denied , 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981).
The statute is not limited to cases involving consumers only. "After all, unfair trade practices involving only businesses affect the consumer as well." United Labs., Inc. v. Kuykendall , 322 N.C. 643, 665, 370 S.E.2d 375, 389 (1988). The Court has previously explained that " '[b]usiness activities' is a term which connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." HAJMM Co. v. House of Raeford Farms, Inc. , 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991). Moreover, " '[c]ommerce' in its broadest sense comprehends intercourse for the purposes of trade in any form." Sara Lee Corp. v. Carter , 351 N.C. 27, 32, 519 S.E.2d 308, 311 (1999) (quoting Johnson v. Phoenix Mut. Life Ins. Co. , 300 N.C. 247, 261, 266 S.E.2d 610, 620 (1980) ).
Our courts have employed a three-prong test to establish a prima facie case under this statute. Spartan Leasing Inc. of N.C. v. Pollard , 101 N.C. App. 450, 400 S.E.2d 476 (1991). A plaintiff must show "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff." Id. at 460-61, 400 S.E.2d at 482 (citing Marshall v. Miller , 302 N.C. 539, 276 S.E.2d 397 (1981) ); see also First Atl. Mgmt. Corp. v. Dunlea Realty Co. , 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998) (same). Unfair competition has been described generally as conduct "which a court of equity would consider unfair." Pinehurst, Inc. v. O'Leary Bros. Realty, Inc. , 79 N.C. App. 51, 59, 338 S.E.2d 918, 923 (citing William B. Aycock, **345 North Carolina Law on Antitrust and Consumer Protection , 60 N.C. L. Rev. 207, 217 (1982)), disc. rev. denied , 316 N.C. 378, 342 S.E.2d 896 (1986). "[A] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Barbee v. Atl. Marine Sales & Serv. , 115 N.C. App. 641, 646, 446 S.E.2d 117, 121 (quoting *479 Marshall , 302 N.C. at 548, 276 S.E.2d at 403 ), disc. rev. denied , 337 N.C. 689, 448 S.E.2d 516 (1994). "[A]ll the facts and circumstances surrounding the transaction" are relevant to determining "[w]hether an act or practice is unfair or deceptive." Id. at 646, 446 S.E.2d 117 (citing Marshall , 302 N.C. at 548, 276 S.E.2d at 403 ). Bad faith or deliberate acts of deceit do not need to be shown. Boyd v. Drum , 129 N.C. App. 586, 593, 501 S.E.2d 91, 97 (1998) (citing Forsyth Mem'l Hosp., Inc. v. Contreras , 107 N.C. App. 611, 614, 421 S.E.2d 167, 169-70 (1992), disc. rev. denied , 333 N.C. 344, 426 S.E.2d 705 (1993) ), aff'd per curiam , 350 N.C. 90, 511 S.E.2d 304 (1999).
In this case, plaintiffs' allegations, as summarized in subparagraphs d, e, g, i, and j of the claim for relief (hereinafter "the non-antitrust conduct") if true, establish all three elements of a prima facie case of unfair and deceptive trade practices affecting commerce that have injured plaintiffs. The only argument made by defendants on the motion to dismiss, and the only ground found by the trial court, was that none of these allegations can support a claim for relief because chiropractors are learned professionals and "[t]he impact of the Plaintiffs' claim is to fundamentally change the marketplace in which chiropractors deliver their services and the way in which insurance companies contract for the delivery of those services." Thus, the only question before this Court is whether defendants' actions as alleged, summarized in those five counts of the claim for relief and as more fully described throughout the second amended complaint, are subject to the exception for "professional services rendered by a member of a learned profession." N.C.G.S. § 75-1.1(b) (2017).
I agree with the majority that our Court of Appeals has followed, and we do well to adopt, a two-part inquiry to determine whether the "learned profession" exclusion applies: "[F]irst, the person or entity performing the alleged act must be a member of a learned profession. Second, the conduct in question must be a rendering of professional services." Wheeless v. Maria Parham Med. Ctr., Inc ., 237 N.C. App. 584, 589, 768 S.E.2d 119, 123 (2014) (quoting Reid v. Ayers , 138 N.C. App. 261, 266, 531 S.E.2d 231, 235 (2000) (citation omitted)). I also agree that the first prong is met here even though HNS is itself an association of chiropractors acting as an intermediary between providers and insurers.
**346 What seems clear to me is that the non-antitrust conduct alleged in the complaint does not involve providing professional services. Therefore, the second prong of the test is not met here.
The Court of Appeals cases addressing this question have held that when a doctor or lawyer or other member of a learned profession is engaging in business negotiations or contractual arrangements, advertising his or her practice, or buying real estate, even though those activities "affect" the provision of professional services, they are not themselves professional services entitled to an exemption. See Hamlet H.M.A., LLC v. Hernandez , --- N.C. App. ----, ----, 821 S.E.2d 600, 608 (2018) ("This case involves a business deal, not rendition of professional medical services."), disc. rev. denied , --- N.C. ----, 822 S.E.2d 637, and disc. rev. denied , --- N.C. ----, 822 S.E.2d 640 (2019). In Reid v. Ayers , for example, while the conduct at issue involved the provision of professional services by an attorney, the Court of Appeals explained that:
[N]ot all services performed by attorneys will fall within the exemption. Advertising is not an essential component to the rendering of legal services and thus would fall outside the exemption. See 47 N.C. Op. Att'y Gen. 118, 120 (1977) ("Advertising by an attorney is a practice apart from his actual performance of professional services. Indeed, it is not a professional practice at all, but rather a commercial one."). Likewise, the exemption would not encompass attorney price-fixing. Id. Although no bright line exists, we think that the exemption applies anytime an attorney or law firm is acting within the scope of the traditional attorney-client role. It would not apply when the attorney or law firm is engaged in the entrepreneurial aspects of legal practice that are geared more towards their own interests, as opposed to the interests of their clients.
*480 138 N.C. App. at 267-68, 531 S.E.2d at 236 (citing Short v. Demopolis , 103 Wash. 2d 52, 60-61, 691 P.2d 163, 168 (1984) (en banc)). The dividing line between what is, and what is not, the rendering of professional services should turn on whether learned professional knowledge and judgment that the ordinary person does not possess is required to provide the services at issue. That is what distinguishes cases involving staff privileges at hospitals and complaints to medical boards, as were at issue in Cameron v. New Hanover Memorial Hospital, Inc. , 58 N.C. App. 414, 293 S.E.2d 901, appeal dismissed and disc. rev. denied , 307 N.C. 127, 297 S.E.2d 399 (1982), and Wheeless , respectively, from this case and from Hamlet H.M.A. "The rendering of a professional service is limited **347 to the performance of work '[c]onforming to the standards of a profession' and 'commanded or paid for by another.' " Phillips v. A Triangle Women's Health Clinic, Inc. , 155 N.C. App. 372, 381, 573 S.E.2d 600, 605 (2002) (citations omitted), aff'd per curiam in part and disc. rev. improvidently allowed in part , 357 N.C. 576, 597 S.E.2d 669 (2003). In Cameron, the Court of Appeals explained that the actions complained of by the plaintiffs were not commercial activities subject to UDTP coverage because they involved professional judgments about the competency of podiatrists.
This evidence indicates that defendants were acting in large measure pursuant to an "important quality control component" in the administration of the hospital. As one court described it, the hospital's obligation is "to exact professional competence and the ethical spirit of Hippocrates as conditions precedent to ... staff privileges." We conclude that the nature of this consideration of whom to grant hospital staff privileges is a necessary assurance of good health care; certainly, this is the rendering of "professional services" which is now excluded from the aegis of G.S. 75-1.1.
Cameron , 58 N.C. App. at 446-447, 293 S.E.2d at 920-921 (alteration in original) (first quoting Walter Wadlington, Jon R. Waltz, & Roger B. Dworkin, Cases and Materials on Law and Medicine 209 (1980); then quoting Sosa v. Bd. of Managers of Val Verde Mem'l Hosp. , 437 F.2d 173, 174 (5th Cir. 1971) ). Clearly it takes medical knowledge to be able to assess the skills and competency of medical doctors. But, in this case, ironically, it is precisely the lack of professional judgment in HNS's utilization management procedures that has led plaintiffs here to allege that the organization is committing an unfair trade practice. Plaintiffs allege that, instead of using professional judgment to decide what services in-network patients need, HNS is simply using a mathematical formula based on the average costs of all its providers. But more fundamentally, if HNS is indeed failing to identify conflicts of interest in some manner that is deceptive, or misrepresenting its services and benefits to providers, those are matters relating to how it conducts its business dealings. To illustrate this principle, if HNS had a routine practice of repeatedly leasing medical office space without disclosing that the buildings were uninhabitable, the learned professions exception would not apply even though the routine practice might keep them in business, which, in turn, would facilitate insured patients receipt of chiropractic services. Cf.
**348 Creekside Apts. v. Poteat , 116 N.C. App. 26, 36-38, 446 S.E.2d 826, 833-34 (failure to maintain dwellings in a safe, fit, and habitable condition while demanding rent is an unfair and deceptive trade practice), disc. rev. denied , 338 N.C. 308, 451 S.E.2d 632 (1994). Typically, specialized medical knowledge is not necessary to ascertain that a building is uninhabitable. Similarly, specialized medical knowledge is not necessary to determine whether HNS is implementing a utilization review procedure without being authorized or licensed to do so or is failing to follow statutory requirements for utilization review.
It may be that plaintiffs cannot prove their allegations, but the sufficiency of their evidence is not at issue here. The allegations of the complaint, taken as true, establish a UDTP claim independent of the antitrust allegations. Expanding the learned profession exception to apply here goes further than what the General Assembly intended when it amended the statute in 1977. When chiropractors are treating patients, the learned profession exception should apply. But when they are running a business processing, *481 administering, and negotiating payments by insurance companies to networked chiropractors, they are in commerce like every other business and should be governed accordingly.
Chief Justice BEASLEY joins in this opinion.

The antitrust and anticompetitive conduct are alleged in subparagraphs a-c, f, h, k. & l of paragraph 162 of the Second Amended Class Action Complaint filed on 20 July 2015.

Paragraph 162(m) alleges that defendants have violated the UDTP by "acting unfairly and oppressively toward Plaintiff and the Class in their dealings with them in an abuse of power and position to achieve ends and using means contrary to the public policy of this State."