IN THE SUPREME COURT OF NORTH CAROLINA

No. 5PA15

Filed 23 September 2016

COMMSCOPE CREDIT UNION,
        Plaintiff

        v.

BUTLER & BURKE, LLP, a North Carolina Limited Liability Partnership,
        Defendant and Third-Party Plaintiff
                v.

BARRY D. GRAHAM, JAMES L. WRIGHT, ED DUTTON, FRANK GENTRY,
GERAL HOLLAR, JOE CRESIMORE, MARK HONEYCUTT, ROSE SIPE, TODD
POPE, JASON CUSHING, and SCOTT SAUNDERS,
        Third-Party Defendants


On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision

of the Court of Appeals, 237 N.C. App. 101, 764 S.E.2d 642 (2014), reversing an order

entered on 26 September 2013 by Judge Richard L. Doughton in Superior Court,

Catawba County.   Heard in the Supreme Court on 1 September 2015.

*Carlton Law PLLC, by Alfred P. Carlton, Jr. and Ian S. Richardson; and
Patrick, Harper & Dixon, LLP, by L. Oliver Noble, Jr., for plaintiff-appellee.*

*Sharpless & Stavola, P.A., by Frederick K. Sharpless; and Wiley Rein LLP, by
Richard A. Simpson, pro hac vice, and Ashley E. Eiler, pro hac vice, for
defendant/third-party plaintiff-appellant.*

*Alston & Bird LLP, by Brian D. Boone, for Chamber of Commerce of the United
States of America, amicus curiae.*

*Womble Carlyle Sandridge & Rice, LLP, by Brent F. Powell, C. Mark Wiley,
and Michael R. Cashin, for Cherry Bekaert LLP, CliftonLarsonAllen LLP, and
Dixon Hughes Goodman LLP, amici curiae.*

*Allen, Pinnix & Nichols, P.A., by Noel L. Allen and Nathan E. Standley, for National Association of State Boards of Accountancy, amicus curiae.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by J. Mitchell Armbruster, Michael W. Mitchell, and Lauren H. Bradley, for North Carolina Association of Certified Public Accountants, American Institute of Certified Public Accountants, and Center for Audit Quality, amici curiae.*

*Hedrick Gardner Kincheloe & Garofalo LLP, by Mel J. Garofalo, for North Carolina Chamber, amicus curiae.*

MARTIN, Chief Justice.

Plaintiff CommScope Credit Union seeks damages from defendant Butler & Burke, LLP, the certified public accounting firm that plaintiff hired to conduct annual independent audits of its financial statements. We allowed discretionary review to address whether defendant owed a fiduciary duty to plaintiff and whether plaintiff's claims against defendant are barred by the doctrines of contributory negligence and *in pari delicto.*

I

Plaintiff is a North Carolina state-chartered credit union with its principal place of business in Catawba County. Defendant is the CPA firm that plaintiff engaged to provide independent audit services from 2001 to 2010. Federal tax law required that plaintiff annually file Form 990, entitled "Return of Organization Exempt From Income Tax," with the Internal Revenue Service. *See* 26 U.S.C. § 6033(a)(1) (2006); *id.* § 6033(a)(1) (2000); *see also id.* § 501(a), (c)(14)(A) (2006);

*id.* § 501(a), (c)(14)(A) (2000).  Plaintiff filed a complaint in Superior Court, Catawba County, alleging that, in performing its annual audits, defendant had "fail[ed] to request and review Plaintiff's tax returns, and thereby fail[ed] to discover that Plaintiff's then[-]General Manager had not filed" Form 990 "from 2001 to 2009." Plaintiff alleged that defendant's inaction "resulted in the Internal Revenue Service's assessment of penalties upon Plaintiff in the . . . amount of . . . $374,200."  Plaintiff asserted claims for breach of contract, negligence, breach of fiduciary duty, and professional malpractice.

Defendant answered the complaint and pleaded seven affirmative defenses, including contributory negligence and *in pari delicto*.  Defendant subsequently moved to dismiss all of plaintiff's claims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, and for judgment on the pleadings under Rule 12(c).  The trial court granted defendant's motion and entered judgment for defendant.  Plaintiff appealed.

The Court of Appeals reversed the trial court's decision.  The court stated that the relationship between an independent auditor and its audit client may give rise to a fiduciary duty as a matter of law because that relationship "appears much more like that between attorney and client, [or] broker and principal, than that between mutually interdependent businesses."  *CommScope Credit Union v. Butler & Burke, LLP*, 237 N.C. App. 101, 105, 764 S.E.2d 642, 647 (2014) (citations and internal quotations omitted).  The court determined that, even if no fiduciary duty exists as a matter of law, the specific allegations in plaintiff's complaint were

sufficient to state a claim for breach of fiduciary duty because the terms of the audit engagement letters discussed in the complaint "assur[ed] Plaintiff that [defendant] had the expertise to review financial statements to identify 'errors [and] fraud[,]' even by Plaintiff's own management and employees." *Id.* (third and fourth alterations in original). The court concluded that defendant had thus "sought and received 'special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.' " *Id.* (quoting *Harrold v. Dowd*, 149 N.C. App. 777, 784, 561 S.E.2d 914, 919 (2002)).

Next, the Court of Appeals addressed defendant's motion to dismiss as applied to plaintiff's claims for breach of contract, negligence, and professional malpractice. Defendant's motion had stated affirmative defenses based on the doctrines of *in pari delicto* and contributory negligence, and based on the terms of the engagement letters. The court concluded that defendant's affirmative defenses of *in pari delicto* and contributory negligence would not entitle defendant to dismissal at this stage because "nothing in the pleadings establishes either that [plaintiff's General Manager's] failure to file the tax returns was (1) negligent rather than intentional wrongdoing or excusable conduct or (2) imputed to Plaintiff as a matter of law." *Id.* at 110-11, 764 S.E.2d at 651. The court also concluded that the terms of the engagement letters were too ambiguous to warrant dismissal of plaintiff's claims based on the pleadings alone. *Id.* at 111-12, 764 S.E.2d at 651-52.

The court therefore reversed the trial court's order granting defendant's motion to dismiss and for judgment on the pleadings. *Id.* at 112, 764 S.E.2d at 652. We allowed defendant's petition for discretionary review and now affirm in part and reverse in part.

II

We review de novo the grant of a motion to dismiss under Rule 12(b)(6) and for judgment on the pleadings under Rule 12(c). *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013); *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335, *disc. rev. denied*, 360 N.C. 78, 623 S.E.2d 263 (2005).

In considering a motion to dismiss under Rule 12(b)(6), the Court must decide "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Bridges*, 366 N.C. at 541, 742 S.E.2d at 796 (quoting *Coley v. State*, 360 N.C. 493, 494, 631 S.E.2d 121, 123 (2006)).

On a motion for judgment on the pleadings, "[a]ll well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false." *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 682-83, 360 S.E.2d 772, 780 (1987) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974)). As with a motion to dismiss, "[t]he trial court is required to view the facts and permissible inferences in the light

most favorable to the nonmoving party." *Id.* at 682, 360 S.E.2d at 780 (quoting *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499). A Rule 12(c) movant must show that "the complaint . . . fails to allege facts sufficient to state a cause of action or admits facts which constitute a complete legal bar" to a cause of action. *Jones v. Warren*, 274 N.C. 166, 169, 161 S.E.2d 467, 470 (1968) (quoting *Van Every v. Van Every*, 265 N.C. 506, 510, 144 S.E.2d 603, 606 (1965)).

We now address whether the facts pleaded in plaintiff's complaint, if true, would establish that defendant owed a fiduciary duty to plaintiff when defendant performed its independent audits of plaintiff's financial statements. For a fiduciary duty to exist, there must be a fiduciary relationship between the parties. *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). This Court has defined a fiduciary relationship as one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Green v. Freeman,* 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013) (quoting *Dalton*, 353 N.C. at 651, 548 S.E.2d at 707). All fiduciary relationships are characterized by "a heightened level of trust and the duty of the fiduciary to act in the best interests of the other party." *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 367, 760 S.E.2d 263, 266 (2014).

The very nature of some relationships, such as the one between a trustee and the trust beneficiary, gives rise to a fiduciary relationship as a matter of law. *See, e.g.*, *Wachovia Bank & Tr. Co. v. Johnston*, 269 N.C. 701, 711, 153 S.E.2d 449, 457

(1967). The list of relationships that we have held to be fiduciary in their very nature is a limited one, *see Dallaire*, 367 N.C. at 367, 760 S.E.2d at 266 (listing categories), and we do not add to it lightly. We have not previously included the relationship of an independent auditor and its audit client in this list, and for good reason. Independent auditors often have significant obligations to third parties or to the public at large that would prevent them from acting solely in their audit clients' best interests. Though an auditor contracts to audit an individual client, the audit report is frequently intended to benefit and to be relied on by third parties such as investors or creditors. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 211, 367 S.E.2d 609, 615 (1988). Because of this, we have held that an independent auditor owes a duty to avoid negligent misrepresentations not only to the auditor's client, but also "to any other person, or one of a group of persons, whom the accountant or his client intends the information to benefit." *Id.* at 210, 214, 367 S.E.2d at 614, 617 (summarizing and adopting *Restatement (Second) of Torts § 552* (Am. Law Inst. 1977)).

The obligation to third parties is even more pronounced when a CPA firm audits the financial statements of a company that is subject to the reporting requirements of the Securities Exchange Act of 1934. *See* 15 U.S.C. § 78j–1 (2012). For instance, as amici point out, the Sarbanes–Oxley Act of 2002 prohibits these auditors from providing additional services—such as investment advising or legal services—to their audit clients that could compromise their ability to act impartially

and in the public interest. *Id.* § 78j–1(g)(7)-(8). Federal law also prohibits independent auditors who audit these companies from "[p]roviding an expert opinion or other expert service for an audit client." 17 C.F.R. § 210.2–01(c)(4)(x) (2016). And the United States Supreme Court has recognized that independent auditors "assume[ ] a *public* responsibility transcending any employment relationship with the client," and that they "owe[ ] ultimate allegiance to the [client's] creditors and stockholders, as well as to the investing public," rather than to the audit client. *United States v. Arthur Young & Co.*, 465 U.S. 805, 817-18 (1984). These federal requirements—whether or not they apply to audits of state-chartered credit unions— underscore why we cannot conclude that an independent auditor is always in a fiduciary relationship with its audit client.

Though no fiduciary relationship arises here as a matter of law, one may arise in fact. We have recognized that the existence of a fiduciary relationship "depends ultimately on the circumstances." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 588, 403 S.E.2d 483, 489 (1991). Specifically, a fiduciary relationship arises whenever "there is confidence reposed on one side, and resulting domination and influence on the other." *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (quoting 25 C. J. *Fiduciary* § 9 (1921)). Thus, we must determine whether the specific allegations in plaintiff's complaint could, if true, give rise to a fiduciary relationship in fact between plaintiff and defendant.

The complaint alleges that, each year from 2001 to 2009, defendant agreed to audit plaintiff's financial statements and other related records "in accordance with generally accepted auditing standards," also known as GAAS. As the complaint indicates, when a CPA firm performs an independent audit, North Carolina law defines GAAS as including the Statements on Auditing Standards issued by the American Institute of Certified Public Accountants (AICPA). 21 N.C. Admin. Code 08N .0403 (2016).

Under the AICPA Statements on Auditing Standards in effect when defendant conducted its audits, the object of a financial statement audit was to express an opinion on whether the financial statements fairly presented the financial position of the audit client. Codification of Accounting Standards and Procedures, Statement on Auditing Standards, AU § 110.01 (Am. Inst. of Certified Pub. Accountants 1972) [hereinafter "AU"]. The independent auditor had to "maintain independence in mental attitude in all matters relating to the audit." *Id.* § 220.01 (Am. Inst. of Certified Pub. Accountants 2006); *accord id.* § 220.01 (Am. Inst. of Certified Pub. Accountants 1972). This required that the independent auditor be "without bias with respect to the client" and demonstrate "a judicial impartiality that recognizes an obligation for fairness not only to management and owners of a business but also to . . . those who may otherwise rely . . . upon the independent auditor's report." *Id.* § 220.02 (Am. Inst. of Certified Pub. Accountants 1972).

To protect the public's confidence in the independence of independent auditors, this standard required not only that an auditor "*be* independent," but that the auditor also "be *recognized* as independent." *Id.* § 220.03. To be recognized as independent, an auditor had to "be free from any obligation to . . . the client, its management, or its owners." *Id.* So under AICPA standards, and thus under the terms of the audit engagement, defendant had to maintain its independence from plaintiff and be free from obligations to or bias about plaintiff. Defendant was required to consider the interests of third parties who might rely on the audit, and to further those interests, even though they could conflict with the interests of the audit client. By contrast, a fiduciary must act in the best interests of its principal. *See Dallaire*, 367 N.C. at 367, 760 S.E.2d at 266. Defendant's commitment to audit plaintiff's financial statements in accordance with GAAS thus did not create a "fiduciary relationship . . . in fact." *Dalton*, 353 N.C. at 651, 548 S.E.2d at 708 (quoting *Abbitt*, 201 N.C. at 598, 160 S.E. at 906).

Nor does the complaint allege that defendant agreed to perform any additional services for plaintiff that could give rise to a fiduciary relationship in fact. In reaching the contrary conclusion below, the Court of Appeals relied on *Estate of Smith v. Underwood*, 127 N.C. App. 1, 487 S.E.2d 807, *disc. rev. denied*, 347 N.C. 398, 494 S.E.2d 410 (1997), "where the accountants were providing accounting and tax-related services," *CommScope*, 237 N.C. App. at 105, 764 S.E.2d at 647. Here, however, plaintiff's complaint does not allege that defendant provided tax-related services or,

as we discuss below, agreed to do anything other than conduct an audit in accordance with GAAS.

The Court of Appeals reasoned that, under the facts pleaded in the complaint, defendant sought and received a special confidence from its audit client, through defendant's pledge to "plan and perform [ ]audit[s] to obtain reasonable assurance about whether the financial statements are free of material misstatements, whether from errors, fraudulent financial reporting, misappropriation of assets, or violations of laws or government regulations that are attributable to . . . acts by management or employees acting on behalf of" plaintiff. *CommScope,* 237 N.C. App. at 105-06, 764 S.E.2d at 648 (brackets in original). The Court of Appeals held that this pledge, read in the light most favorable to plaintiff, gave rise to a fiduciary duty. *Id.* at 106, 764 S.E.2d at 648. But defendant's pledge simply mirrored what the provisions of GAAS required. In *every* independent audit engagement that complied with GAAS, the auditor had to "plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud." AU § 110.02 (Am. Inst. of Certified Pub. Accountants 1997). In other words, defendant's pledge was well within the realm of what an independent auditor was obligated to do under GAAS in the first place. That pledge did not elevate defendant's relationship with plaintiff into a fiduciary one.

The complaint also alleges that plaintiff retained defendant to "notif[y] . . . appropriate credit union personnel of recommended improvement in administrative

or accounting functions." Viewed in isolation, this allegation might be construed to mean that defendant agreed to provide accounting or consulting services outside the scope of an independent audit. But the rest of the complaint makes it clear that defendant did not, and that defendant's promises simply tracked what GAAS requires for an independent audit. According to the complaint, defendant specifically represented to plaintiff that the engagement would "include obtaining an understanding of internal control *sufficient to plan the audit* and to determine the nature, timing, and extent of audit procedures to be performed." (Emphasis added.) Defendant also agreed that "*[i]n the course of performing audit procedures*, [it] would be alert to situations for which [it] could make recommendations for improvement in administrative or accounting functions" (emphasis added), and that it would "communicate those recommendations to the Supervisory Committee in a letter separate from [the] report on [plaintiff's] financial statements."

This is simply what defendant had to do when following the AICPA standards. When defendant first agreed to conduct independent audits of plaintiff's financial statements, GAAS Standard of Field Work No. 2 required an independent auditor to obtain a "sufficient understanding of internal control . . . to plan the audit and to determine the nature, timing, and extent of tests to be performed." AU § 150.02 (Am. Inst. of Certified Pub. Accountants 1972). Although later amended, this standard did not significantly change the nature of the auditor's responsibilities. *See id.* § 150.02 (Am. Inst. of Certified Pub. Accountants 2006). The auditor did not have to actively

search for deficiencies in the audit client's internal controls. *Id.* § 325.04 (Am. Inst. of Certified Pub. Accountants 2009); *id.* § 325.04 (Am. Inst. of Certified Pub. Accountants 2006); *id.* § 325.04 (Am. Inst. of Certified Pub. Accountants 1997). If the auditor became aware of sufficiently serious deficiencies during the course of the audit, however, it generally had to report them to the client. *Id.* § 325.17 (Am. Inst. of Certified Pub. Accountants 2009); *id.* § 325.20 (Am. Inst. of Certified Pub. Accountants 2006); *id.* § 325.02 (Am. Inst. of Certified Pub. Accountants 1997). But the audit's purpose was still "to report on the financial statements *and not to provide assurance on internal control.*" *Id.* § 325.11 (Am. Inst. of Certified Pub. Accountants 1989) (emphasis added); *accord id.* § 325.22 (Am. Inst. of Certified Pub. Accountants 2009); *id.* § 325.25 (Am. Inst. of Certified Pub. Accountants 2006). Defendant operated within this framework and agreed to find internal control deficiencies only to the extent necessary to perform its audits. Because defendant did not agree to affirmatively search for deficiencies outside of the performance of its audits, it did not agree to do anything beyond what an independent auditor normally does.

Thus, plaintiff's allegations, treated as true, do not establish that defendant owed it a fiduciary duty in fact. And as we have seen, the relationship between an independent auditor and its audit client does not categorically give rise to a fiduciary duty as a matter of law. The trial court correctly dismissed plaintiff's breach of fiduciary duty claim. We therefore reverse the decision of the Court of Appeals on this issue.

III

Our disposition of plaintiff's breach of fiduciary duty claim leaves us with one other issue. As we have said, the Court of Appeals also held that plaintiff's complaint withstood defendant's motion to dismiss plaintiff's other claims. *See CommScope*, 237 N.C. App. at 112, 764 S.E.2d at 652. Defendant argued before the Court of Appeals, and again argues in this Court, that those claims are barred by the affirmative defenses of contributory negligence and *in pari delicto*. The members of the Court are equally divided, however, on whether the facts alleged in the complaint establish these defenses. The decision of the Court of Appeals on this issue is accordingly left undisturbed and stands without precedential value. *See, e.g., State v. Long*, 365 N.C. 5, 705 S.E.2d 735 (2011) (per curiam); *State v. Greene*, 298 N.C. 268, 258 S.E.2d 71 (1979) (per curiam).

We therefore affirm the decision of the Court of Appeals in part and reverse it in part, and remand this case to the Court of Appeals for further remand to the trial court for additional proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.

Justice BEASLEY did not participate in the consideration or decision of this case.