*470 Chief Justice MARTIN
dissenting.
In Tillman v. Commercial Credit Loans, Inc., this Court applied common law unconscionability doctrine to invalidate an arbitration clause in the plaintiffs’ loan agreements. 362 N.C. 93, 103-09, 655 S.E.2d 362, 370-74 (2008) (plurality opinion); id. at 110-11, 655 S.E.2d at 374-75 (Edmunds, J., concurring in result only). Three years later, the Supreme Court of the United States decided AT&T Mobility LLC v. Concepcion, which clarified the scope of the Federal Arbitration Act’s preemptive effect when state law might otherwise make an arbitration agreement unenforceable. See 563 U.S. 333, 340, 352 (2011). Because Concepcion’s rationale extends to a case like this one, in which a broadly applicable state law defense (constructive fraud) purportedly requires non-enforcement of an arbitration agreement specifically because it is an arbitration agreement, I respectfully dissent.
Before I turn to the preemption issue, a few observations are in order about the majority’s parsing of state law fiduciary duty principles. Because it asserts that Dr. Bryant committed constructive fraud by failing to adequately disclose certain contractual terms to Mr. King, the majority first has to find that a fiduciary relationship between Mr. King and Dr. Bryant existed when Mr. King filled out the paperwork that included the arbitration agreement—paperwork that Mr. Kong filled out at Dr. Bryant’s office before Dr. Bryant had met him or accepted him as a patient. As the majority correctly notes, certain relationships automatically “give[ ] rise to a fiduciary relationship as a matter of law.” CommScope Credit Union v. Butler & Burke, LLP, _ N.C. _, _, 790 S.E.2d 657, 660 (2016). Curiously, though, the majority does not decide whether a physician-patient relationship had been formed by the time Mr. King signed the arbitration agreement. The majority thus does not determine whether, as a matter of law, a fiduciary duty existed at that time. Instead, the majority decides only that, at the time that Mr. King signed the arbitration agreement, Dr. Bryant owed Mr. King a fiduciary duty in fact.
But, although the majority finds that a fiduciary relationship existed here only as a matter of fact, it effectively determines that a physician-patient relationship existed here in all but name. A fiduciary relationship exists as a matter of fact “whenever ‘there is confidence reposed on one side, and resulting domination and influence on the other.’ ” Id. at _, 790 S.E.2d at 661 (quoting Abbitt v. Gregory, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). Pointing to specific findings of fact by the trial court, the majority maintains that a fiduciary relationship existed between Mr. King *471 and Dr. Bryant primarily because Mr. King placed his trust in Dr. Bryant as a doctor.[1] In addition, the majority quotes Black v. Littlejohn to suggest that Mr. King sought Dr. Bryant’s services because of Dr. Bryant’s “special knowledge and skill,” Black v. Littlejohn, 312 N.C. 626, 646, 325 S.E.2d 469, 482 (1985) (quoting 61 Am. Jur. 2d Physicians, Surgeons, and Other Healers § 167 (1981)), and later quotes Black to assert that Dr. Bryant possessed “special knowledge and skill in diagnosing and treating diseases and injuries, which the patient lacks,” id. (quoting 61 Am. Jur. 2d Physicians, Surgeons, and Other Healers § 167 (1981)). Both of these quotes come from a passage in Black that discusses the characteristics of a fiduciary relationship that exists between a physician and his patient. See id. Thus, the majority determines, in effect, that the fiduciary relationship existed because Dr. Bryant was Mr. King’s doctor—even though the majority claims that its conclusion is reached “independent of the existence of a physician-patient relationship.”
So the majority tries to have its cake and eat it too. It purports not to take a position on whether a physician-patient relationship exists, but then rests its analysis on the characteristics of the physician-patient relationship. More particularly, the majority does not indicate whether a physician-patient relationship exists at the moment that a prospective patient fills out his preliminary paperwork, even when (as here) the doctor has never met the patient or accepted him as a patient. Yet the majority uses the characteristics of a physician-patient relationship, and the things that a prospective patient thinks and does, to find a fiduciary relationship in fact. By relying almost exclusively on aspects of a physician-patient relationship but then finding a fiduciary duty that is “independent” of that kind of relationship, the majority has muddied the waters in this area of the law. This legal sleight of hand is especially troubling for our fiduciary duty jurisprudence and for doctors and patients, who necessarily rely on us to provide clear and predictable rules to guide their daily interactions.
What’s more, the majority’s muddled parsing of state law, however well intentioned, must yield to principles of federal preemption. Section 2 of the Federal Arbitration Act (FAA) provides that an arbitration provision “shall be valid, irrevocable, and enforceable, save upon such *472 grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2 (2012).[2] In cases that it handed down before this Court decided Tillman, the Supreme Court of the United States held that Section 2 of the FAA preempted state law provisions that “set[ ] out a precise, arbitration-specific limitation.” Doctor’s Assocs. v. Casarotto, 517 U.S. 681, 688 n.3 (1996). In Perry v. Thomas, for example, the Supreme Court held that Section 2 of the FAA preempted a California statute that allowed actions for the collection of wages to be maintained even in the face of a private arbitration agreement. See 482 U.S. 483, 484, 490-91 (1987). And in Doctor’s Associates, Inc. v. Casarotto, the Court held that Section 2 preempted a Montana statute that imposed special notice requirements “specifically and solely” on “contracts ‘subject to arbitration.’ ” 517 U.S. at 683 (quoting Mont. Code Ann. § 27-5-114(4) (1995)); id. at 688. Both of these cases addressed state statutory provisions that applied specifically to arbitration agreements, but did not apply to contracts that did not have arbitration agreements.
After Tillman, however, the Supreme Court of the United States . issued its decision in AT&T Mobility v. Concepcion. In Concepcion, the Court squarely held that the use of even a doctrine like unconscionability—-which can be applied to any contract, even one that does not contain an arbitration clause—can be preempted by Section 2 of the FAA when the doctrine “ha[s] been applied in a fashion that disfavors arbitration.” 563 U.S. at 341. The Court reaffirmed its holding in Concepcion *473 two years later. See Am. Express Co. v. Italian Colors Rest., _ U.S. _, _, 133 S. Ct. 2304, 2312 (2013). Concepcion's holding and rationale apply directly to the majority’s approach and make the majority’s holding untenable.[3]
The majority claims that, because Dr. Bryant owed a fiduciary duty to Mr. King, Dr. Bryant committed constructive fraud “by failing to make full disclosure of the nature and import of the arbitration agreement to” Mr. King. But this conclusion requires the majority to find that defendant sought to benefit himself at Mr. King’s expense. See Barger v. McCoy Hillard & Parks, 346 N.C. 650, 666-67, 488 S.E.2d 215, 224 (1997). The majority does so by finding that the arbitration agreement “ensurfed] that any subsequent dispute between the parties would be resolved using the forum, procedures, and decision[-]makers of their choice.”[4] Of course, that is precisely what arbitration clauses in contracts of adhesion do. And that gets to the heart of the matter: the majority takes issue with the arbitration agreement in this case because it is an arbitration agreement.
In doing so, the majority runs headlong into the FAA’s prohibition of state law defenses that specifically target arbitration agreements. State law cannot address the concerns presented by contracts of adhesion in a way that “conflict[s] with the FAA or frustrate[s] its purpose to ensure that private arbitration agreements are enforced according to their terms.” Concepcion, 563 U.S. at 347 n.6. Nor can state courts apply a doctrine like constructive fraud “in a fashion that disfavors arbitration.” *474 Id. at 341. Because the majority does exactly that, its holding is preempted by Section 2 of the FAA.
The majority maintains that its rationale does not single out arbitration agreements for negative treatment because the majority would treat “any agreement that substantially affected Mr. King’s substantive legal rights” in the same way. The majority gives examples of other agreements that it thinks would substantially affect a person’s legal rights in ways that have nothing to do with arbitration. But the fact that the majority might find other contractual provisions to be problematic for other reasons does not change the fact that the majority finds this arbitration agreement to be problematic because it is an arbitration agreement.[5]
In sum, if a state court cannot say that an arbitration agreement is unconscionable for arbitration-specific reasons, it likewise cannot say that the same agreement gives rise to a constructive fraud claim for arbitration-specific reasons. By declining to reach the unconscionability issue and focusing on constructive fraud instead, the majority artfully tries to evade federal preemption. But in our post-Concepcion legal landscape, federal law cannot be so easily evaded. Because the majority has applied the constructive fraud doctrine in a way that disfavors arbitration, and because the FAA clearly prohibits applying that doctrine in that way, I respectfully dissent.

. On the other hand, the majority also finds a fiduciary duty here at least in part because Mr. King “provide[d] Dr. Bryant with confidential medical information,” which is not exactly based on Dr. Bryant’s status as a doctor. (A patient may, for instance, provide confidential medical information to a health insurance company.) But the majority’s reasoning confuses a duty of confidentiality—a more limited duty that can arise even when no fiduciary duty exists—with a full-fledged fiduciary duty.

. The majority expresses considerable doubt that Section 2 of the FAA applies to the arbitration agreement at issue in this case. But it is unclear why the majority thinks that this is such an uphill battle. By its terms, Section 2 applies to any contract to arbitrate a transaction that is either specified in the contract or referred to by the contract, as long as the contract “evidenc[es] a transaction involving commerce.” 9 U.S.C. § 2. Section 2⅛ phrase “involving commerce” has the same meaning as the phrase “affecting commerce,” Allied-Bruce Terminix Cos. v. Dobson, 613 U.S. 265, 273-74 (1995), and Section 2⅛ reach thus “extend[s]... to the limits of Congress’ Commerce Clause power,” id. at 268. The arbitration agreement that Mr. King signed pertained to “any dispute arising out of or related to the provision of healthcare services,” and clearly fails within both the commerce power and, by extension, the terms of Section 2. The provision of healthcare services is a form of commerce, see Nat’l Fed’n of Indep. Bus. v. Sebelius, _ U.S. _, _, 132 S. Ct. 2566, 2587-88 (2012) (opinion of Roberts, C.J.); id. at _, _, 132 S. Ct. at 2617, 2621 (Ginsburg, J., concurring in part and dissenting in part), and contracting for those services is an economic activity that, when aggregated with other economic activities of its kind, is bound to substantially affect interstate commerce, see Gonzales v. Raich, 545 U.S. 1, 22 (2005); see also Nat’l Fed’n of Indep. Bus., _ U.S. at _ n.7,132 S. Ct. at 2622 n. 7. The only quirk in this case is that the arbitration agreement was made separately from any agreement to provide the services themselves. But Section 2, which applies to “a contract... to settle by arbitration a controversy thereafter arising out of such contract or transaction,” 9 U.S.C. § 2 (emphasis added), clearly covers this scenario.

. The majority asserts that “defendants have failed to clearly advance a federal preemption argument” but then proceeds to address that argument at length. That is likely because defendants did cite to Concepcion. Quoting Torrence v. Nationwide Budget Finance, a recent case from our Court of Appeals, defendants raised the fact that Concepcion “dismiss [ed]... the idea that an arbitration agreement, apart from any other form of contract, could be found substantively unconscionable based solely upon its adhesive nature.” 232 N.C. App. 306,322,753 S.E.2d 802,812, disc. rev. denied and cert, denied, 367 N.C. 505, 759 S.E.2d 88 (2014). Although defendants’ reference to this sentence is not the clearest articulation of Concepcion’s preemption principle, it is notable that the very next sentence in Torrence states that the dismissal of this unconscionability argument “was an explicit part of the Supreme Court’s reasoning” in holding that the FAA preempted a state unconscionability rule. Id. at 322, 753 S.E.2d at 812.

. The majority refers to the trial court’s “unchallenged findings of fact” that Dr. Bryant benefitted from the arbitration agreement in this way. But the majority is making a legal argument that the arbitration agreement benefitted Dr. Bryant, and that Dr. Bryant may therefore be hable for the breach of his purported fiduciary duty to Mr. King. We review all conclusions of law de novo, even those that the trial court has characterized as findings of fact.

. The majority quotes Prima Paint Corp. v. Flood & Conklin Manufacturing Co.'s statement that, “if [a] claim is fraud in the inducement of the arbitration clause itself,” then a “court may proceed to adjudicate it.” 388 U.S. 395, 403-04 (1967). But this invocation of Prima Paint is a red herring because Prima Paint is not about preemption at all. It is simply about whether a certain kind of claim arising under Section 2 of the FAA—namely, a “claim[ ] of fraud in the inducement of [a] contract generally,” id. at 404—should be resolved by an arbitrator or by a court, id. at 396-97. Thus, Prima Paint’s holding that an arbitrator, not a court, should resolve this claim, see id. at 404—and its related assertion that a court may resolve a claim about fraud in the inducement of an arbitration clause specifically, see id. at 403-04—does not provide any grist for the majority’s mill.