Maxwell Foods, LLC v. Smithfield Foods, Inc., 2023 NCBC 11.

STATE OF NORTH CAROLINA

WAYNE COUNTY

MAXWELL FOODS, LLC,

           Plaintiff,

v.

SMITHFIELD FOODS, INC.,

           Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 1430

**ORDER AND OPINION ON
DEFENDANT'S PARTIAL
MOTION TO DISMISS**

1.    Smithfield Foods, Inc. has moved to dismiss certain claims that were newly asserted in Maxwell Foods, LLC's second amended complaint. For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motion.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Reid L. Phillips, Charles E. Coble, Eric M. David, and Amanda S. Hawkins, for Plaintiff Maxwell Foods, LLC.*

*Robinson, Bradshaw & Hinson, P.A., by Robert E. Harrington, Ethan R. White, Mark A. Hiller, and Emma W. Perry, for Defendant Smithfield Foods, Inc.*

Conrad, Judge.

I.
BACKGROUND

2.    The Court does not make findings of fact on a motion to dismiss. The following background assumes that the second amended complaint's allegations are true.

3.    Smithfield is the world's largest pork producer. Since 1994, Maxwell has supplied swine to Smithfield under an output contract entitled Production Sales Agreement, or PSA for short. A related letter agreement includes a most-favored-nation clause, in which Smithfield represented that it had given

Maxwell "the same economic incentives" as its "other major swine suppliers" and promised to offer Maxwell "the benefit of future changes in economic benefits given said major swine suppliers" during the PSA's term. (*See* 2d Am. Compl. ¶¶ 10, 18, 22, 33, Ex. 1, Ex. 2, ECF No. 97.)

4.      This longstanding relationship is now at an end. In this case, Maxwell claims that it is going out of business due to Smithfield's wrongdoing. The original complaint included claims for breach of the most-favored-nation clause, breach of the PSA's output requirement, and breach of a supposed duty to renegotiate the PSA's pricing formula. An amendment then added a claim under N.C.G.S. § 75-1.1. In an earlier opinion, the Court dismissed the claim for breach of the duty to renegotiate and the section 75-1.1 claim but allowed the others to proceed. *See generally Maxwell Foods, Inc. v. Smithfield Foods, Inc.*, 2021 NCBC LEXIS 71 (N.C. Super. Ct. Aug. 26, 2021).

5.      With Smithfield's consent and the Court's permission, Maxwell has since amended its complaint for a second time based on information obtained in discovery. The second amended complaint adds new claims for fraudulent concealment and breach of the PSA's price term. These additions are the focus of the present dispute.

6.      The fraud claim relates to the most-favored-nation clause. As early as 2011, Smithfield allegedly breached the clause by offering better economic benefits to some swine suppliers, excluding Maxwell. According to Maxwell, Smithfield had a duty to disclose these offers but concealed them instead. Maxwell alleges that, but for the concealment, it would have acted to enforce its contractual rights sooner and might

have avoided having to go out of business. In addition to seeking compensatory and punitive damages, Maxwell contends that Smithfield should be estopped from asserting the statute of limitations as a defense to any breach that was concealed. (*See, e.g.*, 2d Am. Compl. ¶¶ 60–62, 67–71, 78, 119–21, 157–69.)

7. The claim for breach of the PSA's price term rests on allegations that Smithfield underpaid Maxwell for certain deliveries of hogs. As alleged, Smithfield was supposed to pay based on carcass weight; instead, it sometimes used live weight, resulting in a lower price. Also, at times, Smithfield calculated the amount due using the lower, live-weight price but then paid an even smaller amount. (*See* 2d Am. Compl. ¶¶ 173, 175.)

8. Although Smithfield consented to the amendment that added these new claims and allegations, it reserved the right to challenge them in a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Smithfield has timely filed that motion. (*See* ECF No. 103.) After full briefing and a hearing on 4 November 2022, the motion is ripe for resolution.

II.
LEGAL STANDARD

9. A Rule 12(b)(6) motion "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that

necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted).

10. In deciding the motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019); *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 51 (2016). Exhibits to the complaint are deemed to be part of it and may also be considered, *see Krawiec v. Manly*, 370 N.C. 602, 606 (2018), but the Court need not accept as true any "conclusions of law or unwarranted deductions of fact," *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017) (citation and quotation marks omitted).

III.
ANALYSIS

11. Smithfield moves to dismiss both claims that Maxwell introduced in the second amended complaint. The Court begins with the claim for fraudulent concealment.

A. Fraudulent Concealment

12. Maxwell claims that Smithfield committed fraud by concealing its breaches of the most-favored-nation clause. Smithfield argues that the claim lacks necessary elements of fraud and is barred by the economic loss rule.

13. Fraud has five "essential elements": (a) a false representation or concealment of a material fact, (b) calculated to deceive, (c) made with intent to deceive, (d) that did in fact deceive, and (e) that resulted in damage to the injured party. *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992). The

injured party's reliance on the misrepresentation or concealment "must be reasonable." *Forbis v. Neal*, 361 N.C. 519, 527 (2007).

14. Because "silence is fraudulent only when there is a duty to speak," a claim based on "concealment or nondisclosure" requires the plaintiff to allege that the defendant "had a duty to disclose material information." *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *8 (N.C. Super. Ct. June 18, 2007) (citing *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198 (1976)). A duty to disclose arises when the parties are in a fiduciary relationship, when one party "has taken affirmative steps to conceal material facts from the other," or when "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Harton v. Harton*, 81 N.C. App. 295, 297–98 (1986).

15. Here, there are no allegations that Smithfield and Maxwell were in a fiduciary relationship. Nor are there allegations that Smithfield had knowledge of a latent defect that Maxwell, being unaware, could not have discovered through reasonable diligence.

16. Rather, Maxwell contends, first, that Smithfield's duty to disclose arose from their contractual relationship. That is, the PSA and the most-favored-nation clause together required Smithfield "to disclose to Maxwell any changes to the Economic Benefits that it offered other suppliers." (2d Am. Compl. ¶ 156; *see also* 2d Am. Compl. ¶ 78.) But our appellate courts have not held that an arm's-length contractual relationship—unlike a fiduciary relationship—gives rise to a duty to speak for

purposes of fraud. And Maxwell cites no law to support such a theory. A contractual duty to disclose, if one exists, might support a claim for breach of contract against Smithfield, but it does not support the claim for fraud.

17. Maxwell also contends that Smithfield took affirmative steps to conceal offers that it made to other swine suppliers. Affirmative concealment, if adequately alleged, would give rise to a duty to disclose. *See Harton*, 81 N.C. App. at 298. After careful review, though, the Court concludes that Maxwell has not adequately alleged any affirmative acts of concealment.

18. The second amended complaint is peppered with general allegations that Smithfield "hid," never "disclosed," "prevented Maxwell from learning," and "took affirmative steps to conceal" offers of better benefits to other suppliers. (2d Am. Compl. ¶¶ 99, 128, 139, 158, 159.) These allegations fall well short of the mark. Nondisclosure alone is not an affirmative act of concealment. And "mere generalities or conclusory allegations of fraud will not suffice." *Sharp v. Teague,* 113 N.C. App. 589, 597 (1994). "To show a duty to disclose based on affirmative steps to conceal a material fact, a plaintiff must allege the specific affirmative acts taken to conceal that fact." *Vitaform Inc. v. Aeroflow, Inc.,* 2020 NCBC LEXIS 132, at *31 (N.C. Super. Ct. Nov. 4, 2020).

19. The second amended complaint also alleges that Smithfield began sharing production and sales information with its major suppliers, including Maxwell, in 1994 but stopped doing so in 2007. Maxwell believes that Smithfield stopped sharing this information to keep it from learning about better economic terms given to other

suppliers. (*See* 2d Am. Compl. ¶¶ 54–59.) These allegations, if true, do not show that Smithfield affirmatively concealed its production and sales information, only that it chose not to disclose the information. Moreover, Smithfield made that choice over fifteen years ago. There are no allegations that, at any time since, Maxwell objected to Smithfield's decision to stop providing production and sales information, asked Smithfield to begin providing the information anew, or was prevented from making that request. Again, silence alone is not concealment.

20. Maxwell does allege that it asked Smithfield about compliance with the most-favored-nation clause and that Smithfield responded by falsely stating that it was "paying more for Maxwell's hogs than it was for any other supplier." (2d Am. Compl. ¶ 160; *see also, e.g.*, 2d Am. Compl. ¶¶ 60, 80, 128.) False statements are better viewed as misrepresentations than as concealments or omissions. Either way, Maxwell is required to plead the false statements with particularity. *See* N.C. R. Civ. P. 9(b). This means that Maxwell must allege "the 'time, place and content' of the misrepresentation, the 'identity of the person making the representation,' and 'what was obtained as a result.'" *Bucci v. Burns*, 2017 NCBC LEXIS 83, at *8 (N.C. Super. Ct. Sept. 14, 2017) (quoting *Terry v. Terry*, 302 N.C. 77, 85 (1981)). Or, viewed as concealment, Maxwell must allege with particularity "the event or events triggering the duty to speak," the relevant "time period," and the "content of the information that was withheld," among other things. *Lawrence*, 2007 NCBC LEXIS 20, at *9 (citation and quotation marks omitted).

21.     As best the Court can tell, the second amended complaint identifies only three specific false statements. Each lacks the necessary particularity or is otherwise insufficient.

22.     The first is a statement by Larry Pope, Smithfield's President and COO. As alleged, Pope wrote to Maxwell in July 2003 that "[e]very document I have shows that Smithfield pays at least, if not more, for your hogs than any others whether in the east or the Midwest." (2d Am. Compl. ¶ 62.) At no point, however, does Maxwell allege that Pope's statement was false. In fact, Maxwell alleges that Smithfield began offering better terms to other suppliers in 2011—eight years after Pope's statement. (*See* 2d Am. Compl. ¶ 157.) In addition, Maxwell does not allege with particularity why its reliance was reasonable, including whether it was denied the opportunity to investigate or whether it could not have learned the truth through reasonable diligence. *See, e.g.*, *Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 26 (2003); *Lawrence*, 2007 NCBC LEXIS 20, at *9. This is a notable omission because Maxwell alleges that Smithfield was voluntarily sharing its production and sales information for years before and after Pope's statement. (*See, e.g.*, 2d Am. Compl. ¶¶ 54–58.)

23.     The second statement came from Chuck Allison, another representative of Smithfield. Maxwell alleges that "sometime in 2014," Allison falsely stated that "Smithfield was already paying more for Maxwell's hogs than it paid for any other supplier's hogs." (2d Am. Compl. ¶ 67.) The level of particularity required in a pleading depends on the circumstances. "Relevant factors include 'the nature of the

case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading.'" *Bucci*, 2017 NCBC LEXIS 83, at *8 (quoting *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013)). This dispute involves two large, sophisticated entities with a longstanding business relationship governed by a complex commercial contract. The Court concludes that Maxwell has not pleaded enough circumstantial detail regarding the timing of Allison's statement (a reference to one year in a relationship lasting three decades) or its content (a reference to "paying more" in the context of a complex contract involving formulas, matrices, discounts, and more). Nor has Maxwell alleged with particularity what it is that Allison's statement supposedly concealed, such as which suppliers were receiving better terms at the time of the statement and what those terms were.

24. The third statement also came from Allison. Maxwell alleges that it asked Smithfield, in August 2018, to switch to a new Grade and Yield Matrix for pricing. In response, Allison represented that "[t]here is no advantage to moving matrices" and attached a "materially misleading" spreadsheet in support. (2d Am. Compl. ¶¶ 69–71.) Yet there are no particularized allegations to show what was materially misleading in the spreadsheet. In addition, the allegations of reliance are lacking. Maxwell alleges that it reasonably chose not to challenge Allison's statement because Smithfield had exclusive knowledge of the economic benefits that it gave to other suppliers. (*See* 2d Am. Compl. ¶ 72.) This does not excuse Maxwell's failure to

exercise due diligence because Allison's statement concerned known potential economic benefits—which of two matrices would be more advantageous for Maxwell—not unknown benefits given to other suppliers.

25. Accordingly, the Court grants the motion to dismiss the fraudulent concealment claim. The Court also dismisses Maxwell's request for punitive damages, which is wholly dependent on the fraud claim. Having reached this conclusion, the Court need not address the parties' arguments concerning the economic loss rule.

## B. Statute of Limitations

26. In the second amended complaint, Maxwell alleges that Smithfield is estopped, because of its fraud, from asserting the statute of limitations as a defense to the claim for breach of the most-favored-nation clause. Smithfield argues that dismissal of the fraud claim means that Maxwell has no basis to assert estoppel. Smithfield further argues that, as a result, the statute of limitations partly bars Maxwell's claim for breach of the most-favored-nation clause.

27. "In order for a defendant to succeed on a 12(b)(6) motion to dismiss based on a statute of limitations, he must show that the plaintiff's complaint on its face discloses that the action is time-barred." *Dawn v. Dawn*, 122 N.C. 493, 495 (1996). On a contract for the sale of goods, a plaintiff must bring an action for breach of contract within "four years after the cause of action has accrued." N.C.G.S. § 25-2-725(1). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* § 25-2-752(2).

28. Maxwell filed this suit in August 2020, meaning that the limitations period stretches back to August 2016. It is undisputed that Maxwell has alleged one or more breaches of the most-favored-nation clause within that period. Thus, the face of the complaint does not show that the claim is time-barred.

29. Smithfield's position is that the second amended complaint also includes allegations about breaches that occurred before August 2016 and that these allegations are time-barred. It may be true that the statute of limitations operates to limit Maxwell's potential recovery for this claim. Even so, a motion to dismiss is not suited to an allegation-by-allegation application of the statute of limitations. Rather, this dispute is better suited to summary judgment or to evidentiary motions in anticipation of trial.

30. Accordingly, the Court denies Smithfield's motion to the extent it seeks partial dismissal of Maxwell's claim for breach of the most-favored-nation clause.

C. Breach of the PSA's Price Term

31. Maxwell claims that Smithfield breached the PSA's price term. Smithfield moves to dismiss the claim on the ground that it does not allege the specific provisions of the PSA that were supposedly breached.

32. North Carolina remains a notice pleading State, *see* N.C. R. Civ. P. 8(a), and "claims for breach of contract are 'not subject to heightened pleading standards,'" *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *10 (N.C. Super. Ct. June 19, 2019) (quoting *AYM Techs., LLC v. Rodgers*, 2018 NCBC LEXIS 14, at *52 (N.C. Super. Ct. Feb. 9, 2018)). To state a claim, a plaintiff must allege the existence

of a valid contract and breach of that contract's terms. *See Poor v. Hill*, 138 N.C. App. 19, 26 (2000).

33. The second amended complaint does both. It alleges that the PSA exists and attaches the contract as an exhibit. It also alleges that the PSA obligated Smithfield to pay for hogs based on their "carcass weight" but that Smithfield sometimes paid based on their "live weight," resulting in an underpayment. (2d Am. Compl. ¶ 173.) And it alleges that Smithfield sometimes paid even less than the live-weight formula would have required. (*See* 2d Am. Compl. ¶ 175.) Yes, naming a specific contractual provision by paragraph number or quoting its language would make the claim more clear. But notice pleading rules do not require that level of detail. These allegations are sufficient to put Smithfield on notice of the events that give rise to the claim and to allow it to answer and prepare for trial.

34. The Court therefore denies Smithfield's motion to dismiss the claim for breach of the PSA's price term.

IV.
CONCLUSION

35. For all these reasons, the Court **GRANTS** the motion to dismiss Maxwell's claim for fraudulent concealment and the related request for punitive damages. The claim is **DISMISSED** with prejudice. In all other respects, the Court **DENIES** the motion.

**SO ORDERED**, this the 3rd day of February, 2023.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases