DS & T II, Inc. v. D & E Tax & Acct., Inc., 2021 NCBC 63.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 3445

DS & T II, INC.; THE ESTATE OF
JULIO SPIRO DIBBI; and
REBECCA SOMERVILLE in her
capacities as executor to the Estate of
Julio Dibbi and trustee of the Dibbi
Trust (created in the Will of Julio
Spiro Dibbi),

Plaintiffs,

v.

D AND E TAX AND ACCOUNTING,
INC., and MOHAMED ELBAHRAWI
in his individual capacity and as
president and other official capacities
of D and E Tax and Accounting, Inc.,

Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT
And
PLAINTIFFS' MOTION TO ALLOW
AMENDED COMPLAINT AS FILED**

1.      THIS MATTER is before the Court on Defendants' Motion to Dismiss Amended Complaint pursuant to North Carolina Rules of Civil Procedure ("Rule(s)") 12(b)(1), 12(b)(6), 15(a), and 41(b) (the "Motion"), (ECF No. 29), and Plaintiffs' Motion to Allow Amended Complaint As Filed, (ECF No. 36).  For the reasons stated below, both motions are GRANTED, and this action is DISMISSED with prejudice.

> *Martin & Gifford, PLLC, by John Wait, for Plaintiffs DS & T II, Inc., The Estate of Julio Spiro Dibbi, and Rebecca Somerville.*

> *Spillman Thomas & Battle, PLLC, by Lee D. Denton, Rayford Kennedy Adams, and Kayla Russell, for Defendants D and E Tax and Accounting, Inc. and Mohamed Elbahrawi.*

Earp, Judge.

## I.    INTRODUCTION

2.    This litigation involves the business relationship between two accountants, Mohamed Elbahrawi ("Elbahrawi") and the late Julio Dibbi ("Dibbi"), who died in 2015.  Plaintiffs consist of a corporation owned and operated by Dibbi during his lifetime, and his executor, Rebecca Somerville ("Somerville"), who is also the trustee of his testamentary trust.  They assert nine causes of action based on Elbahrawi's allegedly improper use of Dibbi's "client list" and other "business assets" without compensation.  Defendants move to dismiss the Amended Complaint in its entirety.

## II.    FACTUAL BACKGROUND

3.    The Court does not make findings of fact when ruling on a motion to dismiss under Rule 12(b)(6).  *See, e.g., Concrete Serv. Corp. v. Invs. Grp., Inc.*, 79 N.C. App. 678, 681 (1986).  Rather, the Court tests the claims by stating the relevant factual allegations in the Amended Complaint construed in Plaintiffs' favor without being bound to any of the alleged legal conclusions.

4.    Plaintiff DS & T II, Inc. ("DS&T") is a North Carolina corporation with its principal office in Forsyth County, North Carolina.  (Am. Compl. ¶ 1, ECF No. 26.)  Founded and owned solely by Dibbi, DS&T provided accounting and tax services to its clients.  (Am. Compl. ¶ 8.)

5.    In or about January 2006, Elbahrawi started working as an independent contractor for DS&T.  Elbahrawi was never a principal in DS&T.  (Am. Compl. ¶ 9.)

6.      In 2007, the Internal Revenue Service (the "IRS") began an investigation of Dibbi.  To protect the business, and upon the advice of Dibbi's attorney, Elbahrawi created D and E Tax and Accounting, Inc. ("D and E"), so that DS&T's business could continue "regardless of the outcomes of the IRS investigation."  (Am. Compl. ¶¶ 10–11.)  According to Plaintiffs, Dibbi and Elbahrawi always understood that DS&T's clients "belonged" to Dibbi and/or DS&T, even though D and E "managed" the clients' business from 2007 on.  (Am. Compl. ¶ 11.)

7.      Plaintiffs allege that "Dibbi ran D and E as an owner" from 2007 to 2010, shared in its profits, and paid himself in the same manner that he was paid at DS&T. (Am. Compl. ¶ 12.)  Dibbi also serviced his clients through D and E in the same manner that he had serviced them through DS&T.  (Am. Compl. ¶ 12.)  While Elbahrawi shared in D and E's profits, he did not have access to its bank accounts during this time.  (Am. Compl. ¶ 12.)

8.      In 2009, Dibbi was indicted for tax fraud and obstruction of justice.  (Am. Compl. ¶ 10.)  He pleaded guilty as part of a plea deal, and in 2010, he surrendered himself to Butner Correctional Facility.  (Am. Compl. ¶¶ 10, 13.)  Around this time, a new bank account with Allegacy was opened for D and E so that Elbahrawi would have access to D and E's banking information while Dibbi was in prison.  (Am. Compl. ¶ 14.)  A gentleman named Ashraf Ali was added to this account so that he could "look after" Dibbi's interests.  (Am. Compl. ¶ 14.)

9. When Dibbi was released from prison in the summer of 2011, he "resumed his ownership role" at D and E and "paid himself as an owner" with Elbahrawi's "consent and agreement." (Am. Compl. ¶ 15.)

10. During his time at D and E, Dibbi "acted as the principal" of D and E, "doing bookkeeping and tax services for select clients." (Am. Compl. ¶ 16.)

11. In 2012, Dibbi offered to sell Elbahrawi "his and DS[&]T's business assets and step down as the owner." (Am. Compl. ¶ 17.) Although Elbahrawi declined the offer, Dibbi attempted several times over the next few years to sell these unspecified "business assets" to Elbahrawi. (Am. Compl. ¶ 17.) During one such attempt, Elbahrawi told Dibbi that he could not afford to pay for "the business" and could not pay Dibbi "his owner's share of the profits" because he had to buy new computers for D and E. (Am. Compl. ¶ 18.)

12. Plaintiffs further assert that "DS[&]T and/or [] Dibbi were either a partner in, and/or an owner of D and E, and/or a partner with [] Elbahrawi in the tax and accounting business, sharing in the business's profits and losses and acting as and being acknowledged as an owner of D and E." (Am. Compl. ¶ 31.)[1]

13. Dibbi and Elbahrawi had their last business meeting in 2014, after which D and E agreed to buy from DS&T the real property that D and E occupied. (Am. Compl. ¶ 19.) However, the parties did not reach any agreement that Elbahrawi would pay for DS&T's "client list" or its "other business assets." (Am. Compl. ¶ 19.)

---

[1] Plaintiffs' use of "and/or" makes it difficult to determine the nature of the business relationships.

14. During this time, it was apparent that Dibbi's health was deteriorating, (Am. Compl. ¶¶ 17, 20), and when Dibbi died in 2015, he and Elbahrawi still had not reached an agreement with respect to DS&T's "client list" or "other business assets." (Am. Compl. ¶¶ 17, 21.)

15. Plaintiffs allege that both Dibbi and Elbahrawi understood that DS&T's clients, "client list," and "other business assets" remained the property of "Dibbi and/or DS[&]T" despite their use by D and E. (Am. Compl. ¶ 22.)

16. After Dibbi's death in 2015, Elbahrawi continued to operate D and E as a tax and accounting business, using DS&T's "business assets" and servicing "DS[&]T and/or [] Dibbi's clients" even though Elbahrawi had not purchased the assets. Plaintiffs allege that Elbahrawi purported to be Dibbi's family member and acted as if Dibbi had given DS&T's business to him. (Am. Compl. ¶ 24.)

17. Dibbi bequeathed his tangible personal property to Plaintiff Rebecca Somerville ("Somerville"), who became DS&T's Vice President in 2013, and its President in 2015. (Am. Compl. ¶¶ 1, 27.) Dibbi's residuary estate, including his stock in DS&T, passed to his testamentary trust. Somerville is both the executor of Dibbi's estate and trustee for the trust. (Am. Compl. ¶ 27.)

18. In April 2020, some five years after Dibbi's death, DS&T demanded that D and E pay for Dibbi and DS&T's "business assets," including a "client list," but no payment was made. (Am. Compl. ¶ 25.) Instead, in May 2020, D and E responded through counsel by letter, stating that it would not pay for the privilege of serving

DS&T's former clients and that, in any event, the only "client list" that existed was one that D and E itself had created and maintained. (Am. Compl. ¶ 26.)

### III. PROCEDURAL BACKGROUND

19. Plaintiffs filed their Complaint on 31 July 2020, (Compl., ECF No. 3), and their Amended Complaint on 15 January 2021, (Am. Compl., ECF No. 26). The Amended Complaint contains counts for: (i) constructive fraud, (ii) conversion, (iii) constructive trust, (iv) breach of fiduciary duty, (v) breach of contract, (vi) quantum meruit/unjust enrichment, (vii) accounting, (viii) declaratory relief, and (ix) piercing the corporate veil/alter ago.

20. The Court evaluates the claims and allegations set forth in the Amended Complaint As Filed, (ECF No. 26), even though that pleading differs in several respects from the one this Court approved for filing in its prior Order, (ECF No. 25). Plaintiffs' counsel has acknowledged this violation of the Court's Order but stated that it was not intentional. Defendants' counsel observed that the differences in the two versions of the Amended Complaint did not materially change the outcome. (Hearing Tr. pp. 53–58, ECF No. 53.)

21. For purposes of this Motion, the Court agrees with Defendants and GRANTS Plaintiffs' Motion to Allow Amended Complaint As Filed, (ECF No. 36), but the Court cautions Plaintiffs' counsel to exercise more care to comply with the Court's orders in the future.

22. Defendants filed their Motion on 15 February 2021, seeking to dismiss the Amended Complaint in its entirety. (The "Motion," ECF No. 29.)

23.    The Motion has been fully briefed, and the Court heard oral arguments on 21 July 2021 (the "Hearing") at which all parties were represented by counsel.  The Motion is now ripe for determination.

## IV.    LEGAL STANDARD

24.    When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987) (citation omitted).

25.    The Court must construe the complaint liberally and accept all well-pleaded allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577 (2009).  The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274 (2005) (citation and quotation marks omitted).  "It is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.' " *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166 (2002)).

## V. ANALYSIS

26. Defendants contend that the Amended Complaint does not allege facts sufficient to support any of Plaintiffs' claims against them. They further contend that all of Plaintiffs' claims are time-barred by the relevant statutes of limitations because the action was not commenced until July 2020 and arises out of interactions between Defendants and Dibbi or DS&T that occurred prior to Dibbi's death in 2015. (Br. Supp. Defs.' Mot. Dismiss Am. Compl. 9, ECF No. 30.)

27. Plaintiffs respond that no cause of action in the Amended Complaint accrued until May 2020 when D and E responded to Plaintiffs' April 2020 demand letter. (Br. Opp. Defs.' Mot. Dismiss Am. Compl. and Supp. Pls.' Mot. Allow Am. Compl. As Filed 13, ECF No. 37.)

28. For the reasons stated below, the Court determines that all of Plaintiffs' claims fail to withstand the test of Rule 12(b)(6), in some instances because the substantive allegations do not state a claim, and in other instances because, given the passage of time, any possible claim is barred by the applicable statute of limitations. Therefore, this case is DISMISSED in its entirety.

### A. Conversion

29. In response to obvious hurdles presented by the applicable statutes of limitations, Plaintiffs rely heavily on the fact that they did not present Defendants with a written demand regarding their position with respect to DS&T's assets until April 2020, and, therefore, the statutes of limitations on their various claims did not begin to run until their demand was both made and refused. The Court disagrees.

Among the attempted claims, only Plaintiffs' conversion claim requires that such a "demand and refusal" take place before an action will accrue. *Hoch v. Young*, 63 N.C. App. 480, 483 (1983).

30.     Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439 (1956) (citation and quotation marks omitted). "Where there has been no wrongful taking or disposal of the goods, and the defendant has merely come rightfully into possession and then refused to surrender them, demand and refusal are necessary to the existence of the tort." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 310–11 (2004) (citation and quotation marks omitted).

31.     Plaintiffs brought this cause of action well within the three-year statute of limitations period that followed the May 2020 refusal, s*ee* N.C.G.S. § 1-52(4), so the statute of limitations may not be its Achilles' heel.[2]  But the claim does not survive on other grounds.  In North Carolina, only goods and personal property are proper subjects for a conversion claim.  *See Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414 (2000) ("Intangible interests such as business opportunities and expectancy interests [are not] subject to a conversion claim."); *see also Window World of N. Atlanta, Inc. v. Window World, Inc.*, 2018 NCBC LEXIS 111, at *8–9 (N.C. Super. Ct. 22 Oct. 2018) ("an intangible interest cannot provide the basis for a

---

[2] However, the necessary demand and refusal may have come earlier.  Plaintiffs allege that Dibbi attempted to sell the business to Elbahrawi several times over a period of years beginning in 2012 until 2014, and Elbahrawi refused. (Am. Compl. ¶ 17.)

conversion claim"); *Global Textile All., Inc. v. TDI Worldwide, LLC,* 2018 NCBC LEXIS 159, at *33–34 (N.C. Super. Ct. 29 Nov. 2018) (dismissing plaintiff's claim for conversion because it was based on intangible information and failed to allege a deprivation of use or access to such information); *Horne Heating & Air Conditioning Co. v. Horne,* 2017 NCBC LEXIS 96, at *9 (N.C. Super. Ct. 11 Oct. 2017) ("North Carolina law is clear that 'intangible interests such as business opportunities and expectancy interests' are not subject to a conversion claim.") (quoting *Norman*, 140 N.C. App. at 414).

32.     Here, no goods or tangible personal property is alleged to have been converted, and the Court determines that vague terms such as "customer list" and "business assets" are conclusory and insufficient. *See, e.g., Estate of Vaughn v. Pike Elec., LLC,* 230 N.C. App. 485, 493 (2013) ("On a motion to dismiss under Rule 12(b)(6), the court is not . . . required to accept mere conclusory allegations, unwarranted deductions of fact, or unreasonable inferences as true.") (citation omitted); *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017).  Indeed, when asked at the Hearing what "customer list" was converted, Plaintiffs' counsel clarified that the list was not a tangible item; rather, it was a short-hand reference to Dibbi's client relationships.  (Hearing Tr. pp. 28–29.)  When asked what "business assets" were at issue, Plaintiffs' counsel referenced DS&T's "goodwill."[3]  (Hearing Tr. pp. 30–32.)

33.     Neither past relationships nor goodwill constitutes goods or tangible personal property upon which a claim for conversion may be based in North Carolina.

---

[3] Given that Dibbi's profession was as a tax accountant and that he was incarcerated for tax fraud, whether and how much goodwill even exists is an open question.

*See, e.g., Duo-Fast Carolinas, Inc. v. Scott's Hill Hardware & Supply Co.*, 2018 NCBC LEXIS 2, at \*36 (N.C. Super. Ct. 2 Jan. 2018) (noting that "deprivation to the owner" is an essential element of a conversion claim and, therefore, "retention of customer names and contact information" "cannot constitute conversion under current North Carolina law"); *Horne Heating & Air Conditioning Co.*, 2017 NCBC LEXIS 96, at \*9 (dismissing claim for conversion of contract rights, which are "deemed an intangible interest under North Carolina law") (citing *Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co.*, 141 N.C. App. 569, 583 (2000)).  As alleged, any benefit flowing to D and E from Dibbi's past relationships with customers while working at DS&T is in the nature of a business opportunity or expectancy and cannot support a claim for conversion.  *See Norman*, 140 N.C. App. at 414 ("Nor are intangible interests such as business opportunities and expectancy interests subject to a conversion claim.").

34.     Therefore, the Court determines that the allegations in the Amended Complaint are insufficient to state a claim for conversion.  Accordingly, Defendants' Motion to Dismiss the Second Cause of Action, Conversion, is GRANTED and this claim is DISMISSED with prejudice.

### B. <u>Breach of Fiduciary Duty</u>

35.     A fiduciary relationship is one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence."  *Dalton v. Camp,* 353 N.C. 647, 651 (2001) (quoting *Abbitt v. Gregory,* 201 N.C. 577, 598

(1931)).  "All fiduciary relationships are characterized by 'a heightened level of trust and the duty of the fiduciary to act in the best interests of the other party.' " *CommScope Credit Union v. Butler & Burke, LLP,* 369 N.C. 48, 52 (2016) (quoting *Dallaire v. Bank of Am., N.A.,* 367 N.C. 363, 367 (2014)).

36.    A fiduciary relationship can be *de jure* or *de facto. Lockerman v. South River Elec. Membership. Corp.,* 250 N.C. App. 631, 635 (2016).  But absent a fiduciary relationship, no breach of fiduciary duty claim can exist.  *See Keener Lumber Co. v. Perry,* 149 N.C. App. 19, 28 (2002) ("Put simply, a plaintiff must show (1) the existence of a fiduciary duty, and (2) a breach of that duty.").

37.    Defendants argue that Plaintiffs have not sufficiently alleged that Elbahrawi and D and E owed a fiduciary duty to Plaintiffs and, therefore, Plaintiffs' claim for breach of fiduciary duties fails as a matter of law.  (Br. Supp. Defs.' Mot. Dismiss Am. Compl. 11–15.)   The Court agrees.

### i. *De Jure* Fiduciary Relationship

38.    The Court first examines whether Elbahrawi owed fiduciary duties to Dibbi as a matter of law because of their business relationship.

39.    While "[t]he very nature of some relationships . . . gives rise to a fiduciary relationship as a matter of law[,]" the list of those relationships "is a limited one," and courts "do not add to it lightly." *CommScope Credit Union*, 369 N.C. at 52.

40.    D and E is a corporation, and Dibbi is alleged to have been an "owner," which necessarily means he was a shareholder.[4]  Elbahrawi was also a shareholder in D and E.  Neither man's percentage ownership is alleged.

41.    Generally, shareholders do not owe fiduciary duties to the corporation or to each other.  *Freese v. Smith,* 110 N.C. App. 28, 37 (1993).  However, in the case of closely held businesses like this one, the general rule is subject to an exception.  A breach of fiduciary duty claim may be stated when it is alleged that a controlling shareholder has used his power of control unfairly.  *Loy v. Lorm Corp.*, 52 N.C. App. 428, 432–33 (1981); *Johnston v. Johnston Props., Inc.*, 2018 NCBC 118, at *54 (N.C. Super. Ct. 15 Nov. 2018).  Nevertheless, no such claim is stated here.  There are no allegations that Elbahrawi was a majority shareholder and that he dominated or controlled the business, much less that he did so unfairly.  *Corwin*, 371 N.C. at 625 (dismissing the plaintiff's claim for breach of fiduciary duty due to an absence of facts in the complaint that established control).

42.    Partners in a joint venture may also have fiduciary duties to each other.  *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321 (2002). As our Court of Appeals has explained:

> The essential elements of a joint venture are (1) an agreement to engage in a single business venture with the joint sharing of profits, (2) with each party to the joint venture having a right in some measure to direct the conduct of the other through a necessary fiduciary relationship.  The

---

[4] Despite repeated use of the word "owner" and references to sharing in the profits of D and E, the Complaint does not specifically allege that Dibbi was a shareholder of D and E.  To be sure, Plaintiffs' counsel stated during the Hearing that Plaintiffs allege only that Dibbi was "*acting* as an owner," and not that he was actually a shareholder of D and E. (Hearing Tr. pp. 26–27.)

second element requires that the parties to the agreement stand in the relation of principal, as well as agent, as to one another.

*Id.* at 327 (citations and quotation marks omitted). In other words, each joint venturer has "an equal right of control of the means employed to carry out the venture." *Rifenburg Constr., Inc. v. Brier Creek Assocs. Ltd. P'ship,* 160 N.C. App. 626, 632 (2003), *aff'd,* 358 N.C. 218 (2004) ("Our Supreme Court has further held that a joint venture does not exist where each party to an agreement cannot direct the conduct of the other.") (citation omitted).

43.     In this case, Plaintiffs do not allege that an agency relationship existed between Elbahrawi and Dibbi. Likewise, nowhere in the Complaint does Plaintiff allege that Elbahrawi had an equal right of control over the business. Nor does Plaintiff allege that Elbahrawi was authorized to act on his behalf or vice-versa. Consequently, the complaint fails to allege a *de jure* fiduciary relationship between Elbahrawi and Dibbi.[5]

### ii. *De Facto* Fiduciary Relationship

44.     Plaintiffs maintain that the facts alleged support the existence of a *de facto* fiduciary relationship between Elbahrawi and Dibbi. "*De facto* relationships are less immediately identifiable, as '[c]ourts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded.' " *Hager v. Smithfield E. Health Holdings,*

---

[5] To the extent the Complaint can be read to allege that D and E itself owed a fiduciary duty to Dibbi as a shareholder, the allegation is a nonstarter. *See, e.g., Buttonwood Tree Valve Partners L.P. v. R.L. Polk & Co.*, 2014 Del. Ch. LEXIS 141, at *1 (Del. Ch. 7 Aug. 2014) (holding that a corporation does not owe fiduciary duties to its stockholders).

*LLC,* 264 N.C. App. 350, 355 (2019) (quoting *Abbitt,* 201 N.C. at 598). The standard for finding a *de facto* fiduciary duty, however, is demanding: "Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Id.* at 356 (citations and quotation marks omitted).

45. To be sure, Plaintiffs allege that Dibbi trusted Elbahrawi to create D and E in 2007 and to steer DS&T's business to it. However, they allege that Dibbi placed "special confidence" in Defendants to service those clients without "taking" them. (Am. Comp. ¶ 30.) Plaintiffs further plead that Defendants took advantage of Dibbi because they did not agree to strike a deal with him when they knew his health was in decline. (Am. Comp. ¶¶ 17, 20.)

46. But the Amended Complaint on its face also contains allegations that belie the Plaintiffs' *de facto* fiduciary duty argument. Nowhere does it say that Dibbi objected to the transfer of DS&T's clients and "business assets" to D and E in 2007. To the contrary, it was Dibbi's attorney who recommended the transfer of work. (Am. Comp. ¶ 11.) Dibbi readily participated in D and E after his indictment in 2007 until his incarceration in 2010. He again readily participated in the arrangement after he was released from prison in 2011 until his death in 2015. (Am Complaint ¶15.) Nowhere do Plaintiffs claim that Dibbi was oppressed. They allege that Dibbi, and not Elbahrawi, had control over D and E's management and the servicing of D and E's clients, and that Dibbi ran D and E "as an owner" and "paid himself as an owner" from at least 2007 through 2014. (*See* Am. Compl. ¶¶ 11–16.) Indeed, Plaintiffs

expressly allege that it was Dibbi—and not Elbahrawi—who had sole access to D and E's financial information and bank accounts until Dibbi was incarcerated in 2010 and a new bank account was opened. Even then, a third party—Ashraf Ali—was added to the account to look after Dibbi's interests. (Am. Compl. ¶¶ 12–14.) Thus, the Court concludes that the facts alleged in the Amended Complaint are insufficient to give rise to the existence of a *de facto* fiduciary relationship between Dibbi and Elbahrawi.

47.     Because no fiduciary duty, either *de jure* or *de facto* in nature, existed between these parties, Defendants' Motion to Dismiss Plaintiffs' Fourth Cause of Action, Breach of Fiduciary Duty, is GRANTED, and this claim is DISMISSED with prejudice.

### C. Constructive Fraud

48.     A claim for constructive fraud requires the presence of a confidential or fiduciary relationship between the parties. *Forbis v. Neal*, 361 N.C. 519, 528 (2007). Absent such a relationship, Plaintiffs' claim necessarily fails. *Loray Master Tenant, LLC v. Foss N.C. Mill Credit 2014 Fund I, LLC*, 2021 NCBC LEXIS 15, at \*14 (N.C. Super. Ct. 18 Feb. 2021) ("A claim for constructive fraud likewise requires a plaintiff to allege facts establishing a confidential or fiduciary relationship."). Plaintiffs fail to allege facts showing that DS&T or Dibbi were in a confidential or fiduciary relationship with D and E or Elbahrawi. Conclusory allegations do not suffice. *Meyer v. Walls*, 347 N.C. 97 (1997).

49.     Accordingly, Defendants' Motion as to the First Cause of Action, Constructive Fraud, is GRANTED and this claim is DISMISSED with prejudice.

### D. Breach of Contract

50.     Plaintiffs allege that they had an agreement with Defendants that Plaintiffs' business operations would continue after 2007 under the name D and E, but ownership of the "business assets" would not transfer.  They allege that Defendants have breached their agreement.  (Am. Com. ¶¶ 57–58.)

51.     Defendants respond that Plaintiffs have not alleged the existence of a contract and, even if they had, the statute of limitations has long since expired on a claim for breach.  (Br. Supp. Defs.' Mot. Dismiss Am. Compl. 21–22.)

52.     It is axiomatic that to state a claim for breach of contract, a plaintiff must allege the existence of a valid contract, the defendant's breach of the terms of that contract, the facts constituting the breach, and that damages resulted from the breach.  *See Matthews v. Davis*, 191 N.C. App. 545, 550 (2008).

53.     In the Amended Complaint, Plaintiffs allege the existence of an agreement or "understanding" between Dibbi and Elbahrawi regarding ownership of clients and business assets, but they fail to allege the terms that were breached. Rather, they allege only that beginning in 2012, Dibbi requested payment of some undetermined amount from Elbahrawi, and Elbahrawi steadfastly refused to pay. (Am. Comp. ¶ 17.)  The Court concludes that reference to an "understanding" regarding ownership of client relationships and goodwill is insufficient to allege the existence of an enforceable contract between the parties, particularly in light of other allegations in the Amended Complaint stating that discussions between Dibbi and Elbahrawi on the subject were protracted and that "no deal was reached" regarding

the client list and other business assets before Dibbi's death in 2015. (Am. Compl ¶ 19.)

54.     Accordingly, the Court GRANTS Defendants' Motion as to the Fifth Cause of Action, Breach of Contract, and this claim is DISMISSED with prejudice.[6]

### E. **Quantum Meruit**

55.     A claim for unjust enrichment "is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." *Booe v. Shadrick*, 322 N.C. 567, 570 (1988). "The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor." *Atlantic C. L. R. Co. v. State Highway Comm'n*, 268 N.C. 92, 95–96 (1966).

56.     To recover on a claim of unjust enrichment, Plaintiffs must prove: (1) that they conferred a benefit on another party; (2) that the other party consciously accepted the benefit; and (3) that the benefit was not conferred gratuitously or by an interference in the affairs of the other party. *Se. Shelter Corp.*, 154 N.C. App. at 330 (citation omitted).

57.     Plaintiffs allege that Dibbi and DS&T conferred a benefit on Elbahrawi and D and E by identifying and providing information regarding DS&T's clients so that D and E could do their tax and accounting work. They allege that Defendants

---

[6] The Court observes that, in any event, given the three-year statute of limitations that governs claims for breach of contract, any attempted claim of this nature at this point in time would be futile. N.C.G.S. § 1-52(1).

consciously accepted that benefit, and that the benefit was not conferred gratuitously. (Am. Compl. ¶ 63.)

58. Here, however, Plaintiffs fall victim to the passage of time. A claim for *quantum meruit* has a three-year statute of limitations. *See* N.C.G.S. § 1-52(1) (requiring action within three years upon claims related to implied contract); *Scott v. United Carolina Bank*, 130 N.C. App. 426, 431–32 (1998) (noting that the "plaintiff's claim for recovery in *quantum meruit* may proceed only for compensation for services rendered within the three[-]year period immediately preceding her commencement of this action") (emphasis in original).

59. The Amended Complaint alleges that a benefit was conferred on Defendants when DS&T's clients moved to D and E in 2007. (Am. Compl. ¶¶ 11–12.) The Court concludes that a claim that is made thirteen years later is time-barred. Accordingly, Defendants' Motion as to the Sixth Cause of Action, *Quantum Meruit*, is GRANTED, and this claim is DISMISSED with prejudice.

F. **Constructive Trust**

60. Plaintiffs allege that they are entitled to the equitable remedy of a constructive trust on the past and future profits Defendants have derived and will derive from DS&T's business assets.

61. The imposition of a constructive trust is an equitable remedy used to prevent unjust enrichment acquired through "fraud, breach of duty or some other circumstance making it inequitable for [defendant] to retain [the property]." *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 211 (1970). A constructive trust is a remedy,

not an independent cause of action. *Global Textile Alliance, Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 104, at \*45 (N.C. Super Ct. 9 Oct. 2018). It typically arises "out of the existence of fraud, actual or presumptive—usually involving the violation of a confidential or fiduciary relation—in view of which equity transfers the beneficial title to some person other than the holder of the legal title." *Leatherman v. Leatherman*, 297 N.C. 618, 621–22 (1979) (quoting *Bowen v. Darden*, 241 N.C. 11, 13–14 (1954)). Where there is no valid claim for "some fraud, breach of duty or other wrongdoing by the holder of the property," there is no basis for this remedy. *Wilson*, 276 N.C. at 212.

62. Plaintiffs have not pleaded a valid claim for fraud, breach of duty or other wrongdoing. Accordingly, Defendants' Motion with respect to Plaintiffs' Third Cause of Action, Constructive Trust, is GRANTED, and this claim is DISMISSED with prejudice.

## G. <u>Declaratory Relief</u>

63. Because Plaintiffs' underlying claims fail as a matter of law, they have not alleged a basis for a declaratory judgment. *See Ludlum v. State*, 227 N.C. App. 92, 94 (2013) ("[J]urisdiction under the Declaratory Judgment Act may be invoked only in a case in which there is an actual or real existing controversy between parties having adverse interests in the matter in dispute.") (citation and quotation marks omitted). Accordingly, Defendants' Motion with respect to Plaintiffs' Eighth Cause of Action, Declaratory Relief, is GRANTED, and this claim is DISMISSED with prejudice.

## H. **Accounting and Piercing the Corporate Veil**

64.     Similarly, Plaintiffs' "claims" for an accounting and to pierce the corporate veil both depend upon the success of Plaintiffs' other claims. *See, e.g., Burgess v. Burgess*, 205 N.C. App. 325, 333 (2010) ("An accounting is an equitable remedy sometimes pled in claims of breach of fiduciary duty."); *see also Green v. Freeman*, 367 N.C. 136, 145 (2013) (stating that "[p]iercing the corporate veil . . . allows a plaintiff to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other company or individual . . ."). Because the Court has concluded that Plaintiffs' other claims must be dismissed, Defendants' Motion to Dismiss Plaintiffs' Seventh and Ninth Causes of Action, Accounting and Pierce the Corporate Veil, is GRANTED, and these remaining claims are DISMISSED with prejudice.

65.     Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 41(b) are DENIED as moot.

## VI.     CONCLUSION

66.     For these reasons, the Court ORDERS as follows:

a.     Plaintiffs' Motion to Allow Amended Complaint As Filed pursuant to Rule 15(a) is **GRANTED.**

b.     Defendants' Motion to Dismiss Amended Complaint pursuant to Rule 12(b)(6) is **GRANTED**.

c.     Plaintiffs' Motions to Dismiss pursuant to Rules 12(b)(1) and 41(b) are **DENIED** as **MOOT**.

d.    This action is **DISMISSED with prejudice**.


IT IS SO ORDERED, this the 4th day of October, 2021.


/s/ Julianna Theall Earp
_____
Julianna Theall Earp
Special Superior Court Judge
  for Complex Business Cases